**Wilton ESTERS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15987.**

United States Court of Appeals Eighth Circuit.

Oct. 23, 1958.

See also 255 F.2d 63.

George F. Edwardes, Texarkana, Tex., submitted brief for appellant.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., submitted brief for appellee.

Before JOHNSEN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

A jury found defendant guilty of selling approximately 56 gallons of whiskey in unstamped containers, in violation of Title 26 U.S.C.A. § 5008(b); and of possessing certain items of personal

property intended for use in violating the provisions of the federal internal revenue laws relating to intoxicating liquor, in violation of Title 26 U.S.C.A. § 5686(b). From the judgment imposing sentence, the defendant has appealed.

■ Since the factual background leading to the indictment is detailed in the opinion of the trial court in denying defendant's application for bail, pending appeal, see United States v. Esters, D.C., 161 F.Supp. 203, we dispense with again setting out in full the facts developed on trial. For the purpose of disposing of the points presented by appellant, it will suffice to make this summary of the material evidence: On February 22, 1956, the Sheriff of LaFayette County, Arkansas, and a member of the Arkansas State Police, along with other officers, observed a moonshine whiskey still in operation on property formerly owned by appellant's father-in-law, and which at that time was owned by appellant and his wife, or by his wife. The officers kept the still under surveillance during the afternoon of that day, and, upon returning that night, they found 56 one-gallon containers of moonshine whiskey at the still site; that early in the morning of February 23, 1956, the officers observed Clarence Robinson and an unidentified person load the 56 one-gallon containers of moonshine whiskey in a GMC pickup truck; that shortly after the arrest of Clarence Robinson, appellant drove his Willys pickup truck via the only road leading into the area, and within 100 to 120 feet of the still. Upon examining appellant's truck, the officers found that it contained 600 pounds of cane sugar, a 100 pound sack of bran, 8 five-gallon cans of gasoline, 70 empty one-gallon jugs and a siphon hose. According to the testimony of the sheriff, cane sugar and bran are ingredients adapted to the manufacture of illicit liquor.

The sheriff testified that at the scene he " * * * asked Mr. Esters why he continued to deal with this type of business, and he (the defendant) said that he was in ill health and wasn't able to work and it wasn't too much work involved around that still." The patrol officer testified that in addition to the above admission, appellant also stated " * * * (T)here was only one thing he hated, he said he had a son, that he hated to have him learn and know about this, him being engaged in this business."

Through Clarence Robinson, the Government developed that Robinson had purchased the 56 gallons of moonshine whiskey found in his truck from appellant, and had agreed to pay appellant $5 a gallon therefor; that on the morning of February 23, Robinson was given directions by appellant as to the road which would lead to where the whiskey was located.

■ Appellant challenges the sufficiency of the evidence to sustain the conviction. It would appear that this contention is predicated upon the belief that, absent the testimony of appellant's accomplice, Clarence Robinson, there is no factual basis upon which to rest the verdict. And from this premise the argument is advanced that the uncorroborated testimony of an accomplice is insufficient to furnish a legal basis for a conviction. This is an erroneous concept of the law. For, as this court said in Haakinson v. United States, 8 Cir., 238 F.2d 775, at page 779:

"Even if the jury may have regarded Chesling as an accomplice, that fact would not be of any help to appellant on this appeal, for the testimony of an accomplice, though uncorroborated, can legally constitute a sufficient basis for a conviction, if it is not otherwise incredible or unsubstantial on its face. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Harrington v. United States, 8 Cir., 267 F. 97, 103; Greenberg v. United States, 8 Cir., 297 F. 45, 47; Webb v. United States, 8 Cir., 8 F.2d 145, 146; Rossi v. United States, 8 Cir., 9 F.2d 362, 366; Johns v. United

States, 10 Cir., 227 F.2d 374, 375; McClanahan v. United States, 5 Cir., 230 F.2d 919, 922."

Moreover, there were facts, circumstances and incidents developed in the trial, which properly could have been regarded by the jury as corroborative of Robinson's version of appellant's connection with the offenses. As we have seen, appellant appeared at the scene of the illegal operation on the morning when the attempt was made to convey the moonshine whiskey from the premises; he possessed supplies and equipment adapted for use in distilling the same type of whiskey which Robinson had purchased from him; and at the scene he made voluntary and damaging admissions. In this state of the record we see no room for the contention that the case should not have been submitted to the jury.

■ The appellant also contends that the judgment cannot stand because the court made comments upon the evidence and the weight thereof which were prejudicial and deprived him of a fair trial. The assignment springs from the testimony of J. H. Porterfield, a member of the Arkansas State Police, and the remarks of the court in connection therewith. The following presents a full picture of the incident complained of.

(By Witness Porterfield) "The question was asked, and I can't remember whether I asked or if Sheriff Baker asked it, but I remember the answer, that he was in bad health and had lots of doctor bills and was not able to do heavy work and in that business he didn't have to do heavy work and that was the way he was making his livelihood.

"The Court: What business— you say that business?

"The Witness: In the liquor business. We were referring to this liquor business. I spoke to Mr. Esters in a friendly friendship tone of voice. I have known Mr. Esters a long time and I asked him why he was still engaged in this business,

and I believe he answered the second time about the doctor bills; he said there was only one thing he hated, he said he had a son, that he hated to have him learn and know about this, him being engaged in this business. One other remark I recall, he said: 'I guess I will have to go down and spend some time with my brother-in-law.'

"By Mr. Britt: Who is his brother-in-law, if you know? A. A. P. Powell.

"The Court: Powell?

"The Witness: Yes, sir.

"By Mr. Britt: Will you explain that; did Mr. Esters explain that to you?

"The Witness: Well, in our conversation—I was one of the arresting officers in the Powell case.

"Mr. Shaver: I object to that, if the Court please.

"The Court: Well, he said he might have to spend some time with Powell—do you know where Powell was?

"The Witness: Yes, sir.

"The Court: Where was he?

"The Witness: He was out here at the Correctional Institute out here.

"Mr. Shaver: I certainly object to that.

"The Court: Overruled.

"Mr. Shaver: Well, save my exception.

"The Court: Now, for the sake of the record, he was questioning, as I understand, Mr. Porterfield was questioning—this defendant as to why he was engaged in the liquor business at that particular still. Is that it, Mr. Porterfield?

"The Witness: Yes, sir.

"The Court: And he gave his reasons as to why he was, and he said he reckoned he would have to spend some time with his brother-in-law, and then his brother-in-law, it

seems, was in the Federal Penitentiary. I think that—

"Mr. Shaver: That is what I object to.

"The Court: I think that is perfectly competent, for it is in the nature of an admission on his part.

"Mr. Shaver: Because A. P. Powell was in the Federal Correctional Institute would not be any evidence as to Wilton Esters.

"The Court: No, but—

"By Mr. Shaver: And it has a tendency to prejudice the jury.

"The Court: But it is evidence on Esters' part that he was engaged in this business; it is some evidence; it can be explained possibly.

"By Mr. Shaver: You mean it is some evidence—that A. P. Powell was in an institution is some evidence—

"The Court: Oh, no, but what I am getting at, the man states there, according to Mr. Porterfield and his recollection, he is being questioned about being in this business and he is explaining why he is in that business, and he goes on and says I guess I will have to go down and spend some time with my brother-in-law. I think that is competent.

"Mr. Shaver: Save my exceptions."

Appellant places emphasis on the statement, "But it is evidence on Esters' part that he was engaged in this business; it is some evidence; it can be explained possibly," and urges that it had the effect of placing a greater burden upon defendant than imposed by law, especially since the remark was made prior to the time defendant had testified. To our mind this contention is tenuous and without substance. The statement of this court, appearing in Batsell v. United States, 217 F.2d 257, 262, embodying the apposite principle of law, is apropos to the instant question. There we said:

"Complaint is also made of the trial court's questions put to the defendant-witness Qualls with reference to the reputation of the appellant Batsell on the north side in Minneapolis. We find nothing improper in the Court's questions. In the trial of any case, the judge has the responsibility of seeing that justice shall prevail and to that end may question the witnesses and may even express his opinion with reference to their testimony, provided, of course, that he makes it clear to the jury that they are the ultimate determiners of the facts in question. See Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Fischer v. United States, 10 Cir., 1954, 212 F.2d 441, 444; Griffin v. United States, 83 U.S.App. D.C. 20, 164 F.2d 903, certiorari denied 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137."

See also Goldstein v. United States, 8 Cir., 63 F.2d 609, and Costello v. United States, 8 Cir., 255 F.2d 389, certiorari denied 79 S.Ct. 52. When the comment complained of is viewed in context, we are of the opinion that it was not intended or calculated to disparage the appellant in the eyes of the jury, and we are unwilling to hold that the alleged offensive remark reveals prejudice on the part of the trial judge toward appellant. Indeed, from a careful study of the entire record, it is apparent that the trial judge conscientiously endeavored to preside over the trial with fairness and impartiality.

■ This brings us to consideration of the assignment that prejudicial error resulted from the failure of the court to instruct the jury that Clarence Robinson was an accomplice and that his testimony was to be viewed and considered by the jury with extreme caution. Again, we are compelled to hold the contention is without merit. It should be observed in connection with this point that appellant did not see fit to request the court to give such a cautionary instruction, neither was objection made nor exception taken to the failure of the court to specifically instruct on this ques-

tion. The rule is well settled that, "(i)n the absence of a request for charge, a reversal is justified only if the failure to instruct constitutes 'a basic and highly prejudicial error.' United States v. Levy, 3 Cir., 1946, 153 F.2d 995, 998." United States v. Gordon, 3 Cir., 242 F. 2d 122, 126, certiorari denied 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436. In Gicinto v. United States, 8 Cir., 212 F.2d 8, at page 12, certiorari denied 348 U.S. 884, 75 S.Ct. 125, 99 L.Ed. 695, this pronouncement appears: "It is the long-established rule in the federal courts that 'Failure to give instructions is not reversible, as matter of right, in absence of proper request or exception.'" See also Pereira v. United States, 5 Cir., 202 F.2d 830, 835–836, affirmed on other grounds 347 U.S. 1, 74 S.Ct. 358, 98 L. Ed. 435; Obery v. United States, 95 U.S.App.D.C. 28, 217 F.2d 860, 861, certiorari denied 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255.

█ Furthermore, we do not understand that an absolute and mandatory duty is imposed upon the court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution. See Caminetti v. United States, 242 U.S. 470, at page 495, 37 S.Ct. 192, at page 198, 61 L.Ed. 442, where the Court, in passing on a similar contention stated: "In Holmgren v. United States, 217 U.S. 509, [30 S.Ct. 588, 54 L.Ed. 861] this court refused to reverse a judgment for failure to give an instruction of this general character, while saying that it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices and to require corroborating testimony before giving credence to such evidence. While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." Compare also Papadakis v. United States, 9 Cir., 208 F.2d 945, 954 and Cowell v. United States, 9 Cir., 259 F.2d 660.

Not only is appellant's contention rendered impotent by the foregoing rules of procedure, but the factual situation obviated the necessity for giving the cautionary instruction. As previously demonstrated, there were facts established by probative evidence which the jury had the right to consider as corroborative of Robinson's testimony.

The judgment is affirmed.