Sherman **BRANDON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 14464.

United States Court of Appeals
District of Columbia Circuit.

Argued May 5, 1959.

Decided July 9, 1959.

Fahy, Edgerton and Washington, Circuit Judges, dissented in part and Bazelon, Circuit Judge, dissented.

Mr. Robert A. Marmet, Washington, D. C., with whom Mr. Paul M. Segal, Washington, D. C. (both appointed by this Court) was on the brief, for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and John D. Lane and Harry T. Alexander, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON, WILBUR K. MILLER, BAZELON,

FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant was convicted on two counts of violation of the narcotics law. He claims here that the trial court erroneously ruled (1) he lacked standing to move to suppress, and (2) in any event, the search warrant was valid.

Without hearing, appellant's pretrial motion to suppress was denied. The judge ruled "Unless the defendant asserts either ownership of the seized article or control of the premises in which the seizure occurred, he had no standing to make a motion to suppress." The motion was renewed at the outset of the trial and, by stipulation of counsel, was fully heard by the judge as the trial progressed. Judge Youngdahl concluded that the appellant had failed to establish standing to move to suppress. His ruling reads:

"In his testimony [appellant] has stated that he had no control over the premises; that he was just in there temporarily; that he had no possession whatever of the premises; had no drugs in his possession; he knew nothing about any drugs in the place; there were no drugs in the place.

"He has completely denied the entire story of the police officer with reference to the drugs and on that basis he is a complete stranger coming into this court and attempting to move to suppress some property over which, in no way by even the remotest stretch of the imagination, he had any control whatsoever." [1]

Appellant had testified that he and his friend "Bill" were to go on a picnic. He said Bill had given appellant a key to the room, later searched, and told appellant to wait there while Bill went to buy chickens. A large quantity of narcotics, "capping" equipment and paraphernalia were seized.[2] He denied that the narcotics were his and insisted he knew nothing about narcotics, the record of his testimony shows. "Was it your room?" he was asked. "No, sir, it wasn't my room," he replied. On cross examination he further testified that although his real name is Sherman Brandon, he also used the names "Sherman Brown" and "Sherman Miller" and had done so ever since getting out of the reformatory. He admitted earlier convictions of grand larceny, robbery, larceny of goods from interstate shipment and of violation of the narcotics laws.

I

In Jeffers v. United States, 1950, 88 U.S.App.D.C. 58, 60, 187 F.2d 498, 500, the Government had contended that Jeffers lacked standing unless he could show that he owned or controlled the premises searched *and also* asserted ownership of the evidence seized. We found that the true rule did not require that both such elements be established. We decided that a "person aggrieved" within the meaning of Rule 41(e), supra note 1, included one who, like Jeffers, had simply claimed ownership of the evidence seized. We recognized it to be settled doctrine that the movant must show that his personal rights had been violated. We observed that the exclusionary rule had been formulated by the judiciary in aid of the victim of unconstitutional conduct. We noted that the federal courts with unanimity had denied standing otherwise. Jeffers, we found, had satisfied the requirement as to a showing of violation of his personal rights by his claim of ownership of the seized evidence.

1. Fed.R.Crim.P. 41(e), 18 U.S.C.A., authorizes "A person aggrieved by an unlawful search and seizure" to move for the return of the property and to suppress its use as evidence. In the Appendix of Forms described in Rule 58 to be "illustrative," Form 16 reads in part, "John Doe hereby moves this Court to direct that certain property of which he is the owner * * * was unlawfully seized and taken from him * * *."

2. The evidence seized included some 453.3 grains of heroin hydrochloride, 185 prepared capsules, 2 "cookers," 5 needles and other items.

The Supreme Court agreed. "The respondent unquestionably had standing to object to the seizure made without warrant or arrest unless the contraband nature of the narcotics seized precluded his assertion, for purposes of the exclusionary rule, of a property interest therein." United States v. Jeffers, 1951, 342 U.S. 48, 52, 72 S.Ct. 93, 96, 96 L.Ed. 59. Here, as we have observed, appellant made no such claim, and on the contrary, denied all knowledge of the narcotics.

■■■ McDonald v. United States, 1948, 335 U.S. 451, 452, 69 S.Ct. 191, 93 L.Ed. 153, discloses that McDonald was a roomer in a District of Columbia rooming house. Standing was accorded to him on that account.[3] Here appellant had not alleged ownership of the premises. He was not a tenant. He was not a roomer. He was not an employee. Cf. Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630. In accounting for his presence in "Bill's" room, he neither alleged nor proved a basis for the conclusion that his personal rights were invaded by the officers in their execution of the search warrant. We have repeatedly held that a movant under such circumstances is not a "person aggrieved" within the meaning of the Rule. See, for example, Jones v. United States, 1958, 104 U.S.App.D.C. 345, 262 F.2d 234, certiorari granted, 1959, 359 U.S. 988, 79 S.Ct. 1125, 3 L.Ed.2d 978; Accardo v. United States, 101 U.S.App.D.C. 162, 247 F.2d 568, certiorari denied, 1957, 355 U. S. 898, 78 S.Ct. 273, 2 L.Ed.2d 195; Gaskins v. United States, 1955, 95 U.S. App.D.C. 34, 218 F.2d 47; and almost squarely in point, Scoggins v. United States, 1953, 92 U.S.App.D.C. 29, 202 F.2d 211 and cases cited; see also, Washington v. United States,[4] 92 U.S.App.D.C. 31, 202 F.2d 214, certiorari denied, 1953, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377; Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 84, 149 F.2d 381, 384; Shore v. United States, 60 App.D. C. 137, 49 F.2d 519, certiorari denied, 1931, 283 U.S. 865, 51 S.Ct. 656, 75 L.Ed. 1469.[5] Similar cases in other Courts of Appeals are legion. See, for example, Lovette v. United States, 5 Cir., 1956, 230 F.2d 263, 264 and cases cited.

■■■ The burden was clearly on the appellant to allege and to prove the facts necessary to sustain his position. He failed to do so, and the motion to sup-

3. This court had divided on the issue of "standing." McDonald v. United States, 1948, 83 U.S.App.D.C. 96, 166 F.2d 957. The Supreme Court noted that if McDonald's motion had been granted, the evidence would have been returned and hence not be available for use against his codefendant. 335 U.S. at page 456, 69 S.Ct. at page 193. Here "Bill," who controlled the searched room is not before us and is not shown to have taken any steps to complain of the search of his room.

4. Where we noted that Schencks v. United States, 1924, 55 App.D.C. 84, 2 F.2d 185, relied upon by appellant, had been overruled by Brinegar v. United States, 1949, 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 93 L.Ed. 1879.

5. The exclusionary rule as applied in such cases was fashioned by the courts to apply in situations involving searches and seizures. A very different problem arises with reference to *illegal arrests* and evidence on the person of the accused, seized thereafter. See, for example, United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Williams v. United States, 1956, 99 U.S. App.D.C. 161, 237 F.2d 789. As to the latter, it will be seen that the Government may take nothing, not even fingerprints of the accused, Bynum v. United States, 1958, 104 U.S.App.D.C. 368, 262 F.2d 465, and evidence seized from the person of the accused, consequent upon an illegal arrest, may not be received, Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Of course if the arrest be legal the seized evidence is competent. See, for example, Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, citing with approval, 358 U.S. at page 312, note 4, 79 S.Ct. at page 332, our Wrightson v. United States, 1956, 98 U.S.App.D.C. 377, 236 F.2d 672; Ellis v. United States, 1959, 105 U.S.App.D.C. 86, 264 F.2d 372; Christensen v. United States, 1958, 104 U.S.App.D.C. 35, 259 F.2d 192.

press was properly overruled. Wilson v. United States, 10 Cir., 1955, 218 F.2d 754

## II

■ Even were there error in our resolution of the issue as to "standing," supra, appellant's attack upon the search warrant must fail. He has argued a lack of "probable cause for a U. S. Commissioner to issue a search warrant under Title 33, Section 414 of the D.C. Code [1951]."[6]

In Draper v. United States, 1959, 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327, petitioner advanced the claim that information supplied by an informer was "hearsay," and because hearsay is not legally competent in a criminal trial, it could not legally have been considered in assessing the existence of "probable cause." The petitioner, the Court concluded, was "entirely in error." Dissenting from the Court's final conclusion, Mr. Justice Douglas, Id., 358 U.S. at page 323, 79 S.Ct. at page 338, observed as to this point:

"The Court is quite correct in saying that proof of 'reasonable grounds' for believing a crime was being committed need not be proof

admissible at the trial. It could be inferences from suspicious acts, e. g., consort with known peddlers, the surreptitious passing of a package, an intercepted message suggesting criminal activities, or any number of such events coming to the knowledge of the officer. * * * But, if he takes the law into his own hands and does not seek the protection of a warrant, he must act on some evidence known to him."[7]

Here the officer did not act without a warrant. He submitted his evidence to a United States Commissioner. Thus the usual inferences which reasonable men may draw from evidence were "drawn by a neutral and detached magistrate * * *." Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436.[8]

Defense counsel at trial posed "one proposition," narrowly and specifically, whether or not the search warrant was validly issued. On that score, the trial judge conducted a careful hearing. "The judge shall receive evidence on any issue of fact necessary to the decision of the motion." Fed.R.Crim.P. 41(e). The identity of the informant was promptly

6. In pertinent part this section provides:
   "(a) A search warrant may be issued by * * * a United States commissioner for the District of Columbia when any narcotic drugs are * * * possessed * * * and any such narcotic drugs * * * may be seized thereunder * * *.
   "(b) A search warrant cannot be issued but upon probable cause supported by affidavit particularly describing the property and the place to be searched.
   "(c) The judge or commissioner must, before issuing the warrant, *examine on oath* the complainant and any witnesses he may produce, *and require* their affidavits *or take their depositions* in writing and cause them to be subscribed by the parties making them.
   "(d) The affidavits or depositions must set forth the facts tending to establish the grounds of the application *or* probable cause for believing that they exist.
   "(e) If the judge or commissioner is thereupon satisfied of the existence of the *grounds* of the application *or* that

there is *probable cause* to believe their existence, he must issue a search warrant * * * stating the particular grounds or probable cause for its issue * * *." (Emphasis added.)

7. In Costello v. United States, 1956, 350 U.S. 359, 361, 76 S.Ct. 406, 100 L.Ed. 397, the Court definitively determined that "hearsay" may predicate an indictment and an arrest warrant based thereon. That result follows from the *grand jury's* determination that probable cause existed for the indictment. Giordenello v. United States, 1958, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Of course we have here no problem as to probable cause for an arrest warrant as in Giordenello, and none as to an arrest without a warrant as in Draper. Our question turns upon the action of the *Commissioner* under the District of Columbia Code.

8. There the Court recited the facts at page 12 of 333 U.S. at page 368 of 68 S.Ct., and noted that a police officer attached to the narcotic detail received information from a confidential informer. The officers "were possessed of evidence which a mag-

disclosed,[9] whereafter the trial judge allowed complete scope in the cross-examination of the officer.

It was developed that Officer Aiken for several years had been attached to the Narcotics Squad of the Metropolitan Police Department. On Saturday, September 14, 1957, a woman user of narcotics, who for over a year had been an informer, telephoned the officer that "Sherman and Popeye Bill were going to New York that night to bring back narcotics; and as soon as they would arrive in town, she would let me know where they went to." The woman had been arrested a number of times by the officer, was known by him through investigation to be associated with "Sherman and Popeye Bill" and with the narcotics traffic, and she had given information "from time to time that has proven reliable."

The following day, a Sunday, she telephoned again. She had been to Room No. 7 at 1620 - 18th Street, and "Sherman and Bill" had brought a quantity of narcotics there. She said Sherman would drive to the given address in a 1948 Plymouth, that the men did not live at the given address, but were to meet there that day merely long enough "to cap the stuff up." The officer then called the Commissioner and explained the circumstances. An appointment was made to meet the Commissioner later at his office.

Before meeting the Commissioner, the officer went out to verify the information. He drove to the area, parked his car around the corner and waited. He saw Brandon drive up in a 1948 Plymouth. The officer did not then know him as Brandon, but as Sherman, and he recognized the appellant as one "involved in the narcotics traffic." The officer at some distance followed him to 1620 - 18th Street and saw him enter Room No. 7. He then returned to the Commissioner's office.

How extensive an examination of the officer was made by the Commissioner is not disclosed by the record, for it does not appear to have been the subject of questioning. That such an examination was made we have no reason to doubt for the Code provides: "The * * * commissioner must, before issuing the warrant, examine on oath the complainant * * * and require * * * affidavits or take * * * depositions * * *."

We do have before us a sworn application for the search warrant which particularly describes the premises to be searched: " * * * entire room marked with #7 on door and under #7 on door #34," located at 1620 - 18th Street, N. W., "2nd floor, front." The officer further swore he had reason to believe that therein "is now being concealed certain property, namely, Heroin, needle, syringe, and any other narcotic paraphernalia used in cut [sic] or administering of heroin" in violation of "Title 26 U.S.C. [§§] 4704(a) and 4705(a) * * *." A supporting affidavit further attributed the information to a source that had been reliable in the past and that information from the same source received that very day indicated the described premises to be controlled by a colored man known as Bill and another colored man known as Sherman. The officer's affidavit further attested that the premises were being used to store a large quantity of heroin and that "at the present time" such a supply was there on hand. Based further on his knowledge of the illicit narcotics traffic and the previously established reliability of the source of his information, the officer attested his present belief that narcotics and paraphernalia were then on the premises.

On such information sworn to by an experienced narcotics officer and so known by the Commissioner, the latter concluded "I am satisfied that there is probable cause * * * *" and issued the search warrant accordingly. What-

---

istrate might have found to be probable cause for issuing a search warrant." Id., 333 U.S. at page 13, 68 S.Ct. at page 368.

9. Brandon testified later that he knew her as "probably Bill's girl. I always see them together."

ever other evidence the Commissioner's examination of the affiant may have elicited we do not have before us, as has been noted. That it included at least the specific identification of Room No. 7 is clear, and the Commissioner knew probably the fact of the presence of "Sherman" within and how he arrived there, as the officer's independent verification had developed. That the *officer* had ample grounds for his application seems obvious. The facts and circumstances within the officer's personal knowledge coupled with those of which he had reasonably trustworthy information fully warranted him as a man of reasonable caution in believing that an offense against the narcotics laws had been and was being committed,[10] and he so attested.

This was no case of an officer taking the law into his own hands. He sought the protection of the search warrant. He verified in important particulars as far as seemed then reasonably necessary, the information supplied to him by one who had proved reliable in the past. He saw the 1948 Plymouth as it was driven to the address supplied by the reliable informant. He saw the appellant enter the house and proceed to Room No. 7. He saw the number 7 on the door above the number 34. Circumstances known to and inferences to be drawn by the officer such as are described by Mr. Justice Douglas, supra, predicated the officer's fully founded and reasonable belief. As an experienced narcotics investigator, on sight he recognized the appellant "Sherman" as one engaged in the narcotics traffic whom he knew from investigation to have been associated with Popeye Bill. He knew the latter to be an associate of the woman informer, herself a narcotics user who had been in that very room. That the *Commissioner* from his examination of the officer and from the sworn application and supporting affida-

vit, might thus properly be convinced of the existence of the grounds of the application seems obvious. He could judge for himself the persuasiveness of the facts relied upon by the officer, those known to the officer personally as well as those attributed to the source of the officer's belief.[11] The Commissioner officially declared himself satisfied that probable cause existed for the issuance of the search warrant. Here then was the independent judgment of the "neutral and detached magistrate." Johnson v. United States, 333 U.S. at page 14, 68 S.Ct. at page 367.

Thus tested in the District Court, the grounds for the *Commissioner's* issuance of the search warrant emerged to the satisfaction of the trial judge. We, too, are satisfied he correctly concluded that the Commissioner acted properly on what was before *him*, and that the search warrant was valid.

"It is my feeling," the trial judge said, "that if there ever was proper police procedure, and police procedure that should be commended, it was the procedure that was used in this case where even on a Sunday the officer went to the pains of searching out the Commissioner to get a warrant.

" * * * I think we ought to commend this police officer for taking the extra pains he did in protecting the rights of the individual here and he made an independent investigation.

"Now, if this isn't proper decent police work then I don't know what would be proper police work."[12]

It seems so to us.

Affirmed.

FAHY, Circuit Judge (concurring in result).

As to appellant's standing to require the District Court to consider the valid-

---

10. Draper v. United States, 358 U.S. at page 313, 79 S.Ct. at page 333.

11. Cf. Giordenello v. United States, 357 U.S. at page 486, 78 S.Ct. at page 1250.

12. In the view we take of the case, other claimed errors need not be noticed or discussed. We thus do not rule on appellant's motion to supplement the record.

ity of the search and seizure, I find myself in disagreement with the majority of our court. Rule 41(e) Fed.R.Crim.P. authorizes a "person aggrieved" to move to suppress evidence claimed to have been obtained by an invalid search or seizure. This Rule is the outgrowth primarily of numerous Supreme Court decisions establishing the exclusionary rule, and should be interpreted in light of those decisions.[1] So attempting, I think the core of the matter is that the administration of criminal justice by the federal courts must be free of the use of evidence against an accused obtained by a violation of his rights under the Fourth Amendment. It has usually been said that to obtain the benefit of the rule the accused must claim an interest in the place searched or the thing seized.[2] The reason for this is that the rule is available only to the one whose Fourth Amendment rights are claimed to have been violated; that is, he may not protest the use against him of evidence obtained by the violation of the rights of privacy of someone else. But it is no essential part of the rule that the accused must accuse himself. If the prosecution claims that the accused was in possession or control of contraband or other seized articles, and seeks to use the same as evidence against him, surely he has standing to object that the evidence was obtained in violation of his constitutionally protected rights. Otherwise the purpose of the rule to make the Fourth Amendment effective, and to free federal trials of the fruits of violations of constitutionally protected privacy, would be substantially frustrated; fundamental rights could be violated without recourse because the victim did not concede guilt, where, as in this case, possession is enough to estab-

lish the crime. I think it makes no difference that a concession of possession for purposes of objecting to the evidence might not be admissible on the issue of guilt, for the right to protest should not require an accused to accuse himself when the prosecution's own testimony establishes that his right of privacy is involved. So to require would exact too high a price for the availability of the exclusionary rule. Accordingly, I would hold in this case that the prosecution's evidence as to the search and seizure conferred standing upon the appellant to object to the use of the evidence obtained by the alleged violation. See Judge Bazelon's dissenting opinion in Christensen v. United States, 104 U.S.App.D.C. 35, 259 F.2d 192; and Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789.

Having accorded appellant standing I would nevertheless overrule his objections to the evidence, because I think the seizure of it was not in violation of his constitutionally protected rights. There was probable cause, the police commendably obtained a search warrant from a magistrate, and properly obtained the evidence.

One other matter should be mentioned. Appellant contends that he was denied the right to question an informer on the issue of reliability of information given to the officer who applied for the search warrant. The present case I think does not present any error which justifies any further proceedings because of this matter. The court was not obligated to produce the informer, and no continuance was requested to enable the defense to do so.

I join in affirming the conviction, and am authorized to say that Judge

---

1. A painstaking review of the cases is contained in the dissenting opinion of Mr. Justice Frankfurter in Harris v. United States, 331 U.S. 145, 155, 67 S.Ct. 1098, 1104, 91 L.Ed. 1399. See, also, the opinion's reference to the Act of June 15, 1917, 40 Stat. 228, at 331 U.S. 165, 67 S.Ct. 1108.

2. See our opinion, for example, in Jeffers v. United States, 88 U.S.App.D.C. 58, 187 F.2d 498, affirmed 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59. In that case, however, the present question was not involved. On standing the emphasis was that the accused claimed ownership of the property seized, which made it unnecessary also to establish an interest in the premises searched.

EDGERTON and Judge WASHINGTON join in this opinion.

BAZELON, Circuit Judge (dissenting).

I agree with Judge Fahy that appellant had standing to challenge the validity of the search warrant. (See discussion of standing issue in my dissenting opinion in Christensen v. United States, 1958, 104 U.S.App.D.C. 35, 37–44, 259 F.2d 192, 194–201, wherein the majority did not reach that issue.) But I would not decide the question of the validity of the search warrant in this case; instead, I would remand the case to the District Court for reconsideration of that issue after affording appellant full opportunity and assistance to challenge the arresting officer's affidavit of probable cause, upon which the search warrant was issued. (For discussion of informer's role see my statement on the petition for leave to appeal in forma pauperis in Anderson Jones v. United States, 105 U.S.App.D.C. 326, 266 F.2d 924.

The arresting officer revealed the name of the informer, Jacqueline Johnson. He testified that she telephoned him the information upon which he based his affidavit but that he did not know her present address although he did know she was free on bond in another narcotics case. Defense counsel thereupon stated to the Court:

"At this time, Your Honor, I would request the Court to issue a subpena for the appearance of Jacqueline Johnson. I will attempt to find the address, and I will go through the gamut of the bondsmen this afternoon and find out who has her bond; and once finding the address, I ask the Court to issue a subpena for her."

On the same day, at the close of the day's session, defense counsel requested the issuance of a subpena, and was advised by the court that the subpena would issue upon filing of an affidavit of poverty.[1]

Although no affidavit was filed, defense counsel did not abandon the matter. He made diligent efforts to obtain the appearance of the informer. When the case was resumed on the morning of March 14, 1958, he told the court:

"If your Honor please, for the record, if your Honor will recall on Wednesday there was disclosed to the Court and counsel that the name of the informer for the search warrant was Jacqueline Johnson, and pursuant to what I said in court Wednesday I attempted to find Jacqueline Johnson through the medium of the bondsman.

"I learned that she was on bond through a Mamie Robinson. I talked to Joe Goldsmith, who is the agent for Mamie Robinson, who told me that he did not know the address of Jacqueline Johnson because of the fact that she said she had been bothered by the police and she didn't want to disclose it and he didn't want to know it, but she was in touch through one of his men.

"I asked him to get in touch with Jacqueline Johnson in that manner and he informed me that he would. This morning at nine o'clock Jacqueline Johnson called me and would not give me her address. I told her that she was wanted here in this court at eleven o'clock this morning.

"She said she would be here but she wouldn't be here at eleven; she would try to be here at twelve. And that is the situation.

"I have done everything I can as counsel to learn the whereabouts of Jacqueline Johnson and that is what I have come up with."

At the conclusion of that morning's session, the following occurred:

[Defense Counsel]: "That is all I have, your Honor, with the exception of the testimony from this wit-

---

1. On the matter of poverty, defense counsel stated that appellant was without any funds; that counsel was retained by the family; that he received only $60.00; and that he expected no more since appellant's "wife has just gone on relief."

ness, Jacqueline Johnson, who is not here at the present time.

*"But on the telephone this morning she did indicate that her testimony would be completely contrary to what the officer has testified to.* So I do feel that she is material.

\* \* \* \* \* \*

"The Court: Well, I will adjourn until 2:30." [Emphasis supplied.]

When the afternoon session opened, defense counsel stated to the court:

"As per arrangement with counsel, if your Honor please, I waited here until 12:03 [12:30?] in the courtroom and the witness informed me that she would be here between twelve and 12:15 and she did not show up.

"I understand through Mr. Smithson that possibly through inadvertence I made a misrepresentation to the Court. The witness did not tell me this morning that she didn't know Brandon. *The witness did say that the conversation that she had with the Officer Aiken was not as Officer Aiken testified to;* that she did tell him that Brandon and Pop-Eye were coming to town and she didn't tell him that *she* [²] had narcotics.

*"She also said that she didn't make any telephone calls to him."* [Emphasis supplied.]

To which the court responded:

"Well, I believe Officer Aiken. I don't believe her now. I believe she did tell him just as he testified."

Thus the matter ended.

From the foregoing so much, at least, seems clear to me: that counsel, whose good faith has not been challenged, represented that the informer's testimony would materially contradict that of Officer Aiken upon the critical issue of prob-

able cause; that counsel made diligent effort to obtain her testimony; and that, in light of the court's announcement that he believed Officer Aiken, defense counsel could reasonably assume that further efforts would be futile. The Government suggests the possibility that all the court meant by its announcement was that it would not postpone the proceedings to obtain the informer's testimony. Even adoption of this speculation would not alter my view of the necessity for a remand. The integrity of the administration of criminal justice required further opportunity—and the Government's assistance, if necessary—to obtain this critical testimony. Unless this matter is clarified upon a remand of the case, it seems impossible to square the repudiation of the informer, on the ground that she is not a credible witness, with reliance upon her information as a basis for sustaining the warrant.

---

2. Counsel we appointed for appellant to prosecute this appeal in forma pauperis filed a motion to correct transcript of record, by changing the underscored word *"she"* to "they," meaning appellant and "Pop-Eye Bill." An affidavit by appellant's trial counsel was filed in support. The Government filed an affidavit of the court reporter in opposition. I would leave this dispute to be resolved by the testimony of the informer in the hearing upon the remand I would order.