**Joseph WILLIS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 14852–14854.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 23, 1959.

Decided Sept. 24, 1959.

Petition for Rehearing Denied
Nov. 12, 1959.

Bazelon, Circuit Judge, dissented.

Mr. Albert F. Beasley, Washington, D. C., with whom Mr. Robert R. Redmon, Washington, D. C. (both appointed by this court), was on the brief, for the appellant.

Mr. Louis M. Kaplan, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Mr. Harold D. Rhynedance, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, BASTIAN and BUR-GER, Circuit Judges.

BURGER, Circuit Judge.

These are appeals from convictions on three indictments charging appellant with violations of the narcotics laws.[1] Appellant urges two grounds for rever-

sal: (1) that certain evidence was illegally seized from his person and should have been suppressed; (2) that the indictments were improperly consolidated for trial, and the judge failed to instruct the jury to consider separately the evidence relating to each of them.

■■ We see no merit to appellant's argument that the trial court erred in refusing to suppress certain narcotics and marked money which the government allegedly took from his person. Even if it be assumed that the warrant directing appellant's arrest was defective under Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503,[2] there was ample probable cause for arrest without a warrant[3] and this fact was conclusively established at trial.[4] Appellant was given an opportunity to rebut prosecution evidence which constituted the government's case against him and which also showed probable cause for the arrest, and he tried to do so, but he failed to convince the jury. Under these circumstances the Giordenello case does not prevent the government from relying on a showing of probable cause extrinsic to the warrant and complaint. It therefore follows that the arrest was legal and the evidence properly seized as incident thereto. Draper v. United States, 1959, 358 U.S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327; Brinegar v. United States, 1949, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879.

While we think appellant has no standing to seek suppression of the narcotics, we need not reach that issue in order to

1. 35 Stat. 614 (1909), as amended 21 U.S.C.A. § 174; and Internal Revenue Code of 1954, §§ 4704(a) and 4705(a), 26 U.S.C.A. §§ 4704(a), 4705(a).

2. The complaint on which the warrant was based (Rules 3 and 4, Fed.R.Crim. P., 18 U.S.C.A.) merely recited: "That on or about July 23, 1957, at Washington in the District of Columbia John Doe/Little Joe did unlawfully possess and sell a narcotic drug, to wit, heroin."

3. The testimony of Officer King was that on two occasions prior to his arrest ap-

pellant had sold narcotics through an intermediary to King. It is evident from the record that the arresting officer, Aiken, was informed of these sales and King clearly identified appellant to Aiken. The second sale occurred about two hours before appellant was arrested in the pool hall where it allegedly took place.

4. Except for the narcotics and marked money allegedly taken from appellant's person when he was arrested, the arresting officer had available at the time of arrest all the information on which the jury subsequently found appellant guilty beyond a reasonable doubt.

dispose of the case. Christensen v. United States, 1958, 104 U.S.App.D.C. 35, 259 F.2d 192; Accardo v. United States, 101 U.S.App.D.C. 162, 247 F.2d 568, certiorari denied 1957, 355 U.S. 898, 78 S.Ct. 273, 2 L.Ed.2d 195; Harvey v. United States, 90 U.S.App.D.C. 167, 193 F.2d 928, certiorari denied 1952, 343 U. S. 927, 72 S.Ct. 760, 96 L.Ed. 1337. In Williams v. United States, 1956, 99 U.S. App.D.C. 161, 237 F.2d 789, we were dealing with seized property which was indisputably in the defendant's possession after what was held to be an illegal arrest; that case holds simply that the fruit of an illegal arrest is inadmissible, as we also held in Bynum v. United States, 1958, 104 U.S.App.D.C. 368, 262 F.2d 465.

On the consolidation point, two separate assignments of error are made: (1) that the initial allowance of consolidation was error, and (2) that failure to instruct the jury to consider the indictments and the evidence separately was error. However, the record shows that trial counsel affirmatively expressed satisfaction with the consolidation,[5] and at the conclusion of the instructions, he said he had no others he wanted given.[6]

At the beginning of the trial the judge could not possibly have foretold that consolidation might eventually and erroneously prejudice appellant; only his defense counsel could then have possibly known. Absent an objection at the outset the trial court acted properly in permitting consolidation. The time-saving factor could not be allowed to override the interests of justice if a timely objection had been made, but there was no occasion to reject the consolidation since trial counsel did not suggest that defendant would be harmed thereby. Appel-

lant cannot now be heard to argue, for the first time, that consolidation was erroneous and prejudicial.

In the absence of a request for a charge, reversal is justified only if the failure to instruct constitutes a basic and highly prejudicial error. Esters v. United States, 8 Cir., 1958, 260 F.2d 393 (warning on accomplice testimony); United States v. Gordon, 3 Cir., 242 F.2d 122, certiorari denied 1957, 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436 (explanation of offense of tax evasion). In Obery v. United States, 1954, 95 U.S.App.D.C. 28, 217 F.2d 860, certiorari denied 1955, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255, appellant urged reversal of his robbery conviction on the ground that the trial court failed to instruct the jury about the circumstances of his identification and about the weight to be accorded a challenged confession. No request for these instructions had been made at the trial. We affirmed on the theory that an omitted instruction for which there had been no request could never warrant reversal unless it concerned a "crucial issue either of law or of fact of a sort with which the jury cannot properly deal without a particularized instruction from the court." 95 U.S.App.D.C. at page 29, 217 F.2d at page 861. The omitted instruction of which appellant here complains for the first time is not such an instruction as would lead us to make an exception to Rule 30, Fed.R.Crim.P.,[7] under the doctrine of the Obery case.

There has been no contention that trial counsel's failure to object to consolidation and his failure to request instructions constitute ineffective assistance of counsel, nor could such a contention be maintained. See Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d

---

5. "The Court: Are these consolidated, all three?
  "Defense Counsel: Yes, sir.
  "Prosecutor: Yes, Your Honor, all three of them.
  "The Court: I just wanted to make sure, so we wouldn't make error here."

6. "The Court: Is there anything further by either counsel?

  "Prosecutor: No, Your Honor.
  "Defense Counsel: No, sir."

7. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

787, certiorari denied 1958, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86.

The dissenting view seems to be that unsuccessful "trial tactics" of defense counsel are grounds for reversal in every criminal case unless, on review, we are satisfied, first, that those tactics were "based on an informed and deliberate choice," and second, that there was "an acceptance of a disadvantage for the purpose of acquiring some advantage." This is a novel view of both the appellate function and of trial tactics.

To determine whether trial counsel made his "choice" of tactics on an informed basis, according to the dissent, would require both an examination into his professional competence, skill and judgment, and possibly even a psychoanalysis of defense counsel to explore his motives. No appellate court anywhere is competent to embark on such an inquiry. It is enough that trial counsel *at the time he made the choice* believed what he was doing was to his client's advantage. Unless appellate courts are to engage in an utterly impossible course of exploring these purely subjective aspects, we simply cannot hope to find these answers. Indeed, this is not the business of judges and we are less than candid if we do not say so.

The dissent would equate "plain error" as defined in the rules to what is now described as "obvious blunder"—as seen through the eyes of the appellate court after the event. If we were to adopt this concept that "plain error" is any error plain enough to be perceived by hindsight, there would be nothing left of the harmless error rule. We are urged, in effect, to adopt a rule that where a choice of trial tactics of defense counsel "proves fatally prejudicial to the defense and which, *in retrospect,* should not have been made" (emphasis added) we should reverse the conviction unless the trial judge has performed the "duty to instruct the jury in such a way as to mitigate the prejudice * * * [of] an obvious blun-

der." This notion is at war with all our traditions of a trial as a search for truth in the millstones of the adversary process. In any event this issue has been set at rest by this court in Mitchell v. United States, 104 U.S.App.D.C. at page 63, 259 F.2d at page 793, where this court, speaking through Chief Judge Prettyman, said:

> "It is no part of the judge's function to evaluate the relative efficacy of trial tactics. If a trial judge were to understand that after the trial he would in all probability be called upon to determine whether each or any of the trial steps taken by the defense was or was not 'ineffective', his whole attitude toward and conduct of the trial would change. We think this would destroy the concept of an impartial judge, a concept basic to our system."

If judges are to have imposed upon them the duty of correcting "obvious blunders" of defense counsel, fairness would dictate that they must also, in order to protect the public, correct "obvious blunders" of the prosecutors. Such a procedure could not but fail to sap the independence of our trial bar; moreover, it would, as Judge Prettyman pointed out, inject the trial judge into what, as an impartial presider, he should abstain from—except in the most extraordinary and unusual circumstances.

Affirmed.

BAZELON, Circuit Judge (dissenting).

These are appeals from convictions under three separate indictments for violation of the narcotics laws.[1] The grounds urged for reversal are that the trial court erred in failing to suppress evidence obtained from appellant at the time of his arrest and in permitting consolidation of the three indictments.

The first indictment charged appellant in three counts with violations arising from a transaction in which he allegedly

---

1. 35 Stat. 614 (1909), as amended, 21 U.S.C.A. § 174, and Internal Revenue Code of 1954 §§ 4704(a) and 4705(a).

sold narcotics through one William Phillips (charged as co-seller) to an undercover police officer, Charles King. The sole testimony at trial supporting appellant's conviction under this indictment was that of Officer King. He testified that on July 23, 1957, he had given money to Phillips for the purchase of narcotics, whereupon Phillips went up to appellant, who was about twelve feet away. Officer King then observed that each passed something unidentifiable to the other. Phillips then returned to Officer King, without removing his hands from sight, and handed to Officer King two capsules which contained narcotics. Appellant admitted the encounter but denied that any objects had passed between him and Phillips.

The second indictment also charged appellant on three counts with violations arising from a similar transaction on August 8, 1957. Again the testimony at trial showed that Officer King was the purchaser, the intermediary being one Robert Warren, who was charged as a co-seller. Officer King testified that he gave Warren four one-dollar bills whose serial numbers had previously been recorded. Officer King then watched from a parked car as Warren approached appellant at the doorway of a poolroom. Warren and appellant entered the poolroom and shortly thereafter Warren came out and handed to Officer King two capsules containing narcotics. Officer King was not asked and did not state whether Warren indicated the source of these capsules. Police Officer Aiken testified that a short time later he arrested appellant in the poolroom and found in his pocket three of the one-dollar bills which Officer King had previously given to Warren. At the same time and place several other suspected narcotics offenders were arrested. Officer Aiken also testified that at the time of his arrest appellant admitted the sale to Warren. Warren testified for the defense that he had not purchased the narcotics from appellant. Appellant, during the course of his testimony, denied the sale and attempted to explain his possession of the incriminating bills by stating that, immediately prior to his arrest, he had won some money playing pool.

In the third indictment, appellant was charged in two counts [2] with violations arising from his possession of narcotics at the time of his arrest. The sole testimony supporting conviction on this indictment was that of Officer Aiken, who stated that when he arrested appellant on August 8, appellant removed from his pocket and dropped to the floor a bottle containing 42 capsules of heroin. Appellant denied ever having possessed this bottle.

## I.

After his arrest appellant, acting *pro se*, filed various motions to suppress evidence. On January 9, 1958, a hearing was held on such a motion. Appellant was represented by retained counsel, who stated to the court at the outset of the hearing that he opposed the motion to suppress on the ground that he did not want appellant to claim ownership of the drugs. The judge explained to appellant that in order to challenge the search and seizure he must claim possession, whereupon appellant, having consulted with counsel, withdrew the motion. Nevertheless, the judge, expressing a desire "to do substantial justice," called the arresting officer (Officer Aiken) to the stand and questioned him. Officer Aiken testified that on August 5, 1957, Officer King had obtained a warrant for the arrest of appellant, which was the basis for the arrest on August 8. He explained how he had seized the bottle containing the 42 capsules of heroin, and the marked money. At the conclusion of this testimony, the court, notwithstanding the withdrawal of the motion, denied it with prejudice.[3]

2. In this indictment no violation of § 4705 (a) was charged.

3. The court's ruling was in the following language: "It is the ruling of the Court that the motion to suppress the evidence, on the testimony of the officer being called to the stand by the Court, and the fact that the motion was in the Court's presence withdrawn by the defendant, who has offered no testimony, that the motion to suppress the evidence will be denied, with prejudice."

On April 25, 1958, a hearing was held on a new motion to suppress, also filed by appellant *pro se*. Again appellant was represented by retained counsel who again stated to the court that he had advised his client that the motion should not have been filed. Counsel requested permission to withdraw from the case because of his disagreement with his client. This request was denied and counsel was directed to advise appellant, who was permitted to state to the court his version of the circumstances surrounding his arrest. The court informed appellant that he could not seek to suppress the narcotics because he did not claim ownership or possession. Appellant then stated that the marked money had been taken from his pocket and that "the money was mine." The court suggested that appellant might be making a serious error in claiming ownership of the money and suggested that he confer with his counsel. After this conference, the court pointed out to appellant that statements which he made could be used against him. Appellant stated that he was "very confused" and the court suggested that it could deny the motion without prejudice or permit it to be withdrawn. At appellant's request, it was denied without prejudice. The effort to suppress was not renewed at trial.

The Government contends that appellant has waived any objection to the admission of evidence by his withdrawal of his motion to suppress at the first hearing and by his acceptance of a denial without prejudice of his subsequent motion. In my view this contention is untenable because (1) the circumstances under which appellant withdrew his first motion clearly belie an intelligent or voluntary waiver; and (2) in conducting a hearing, at which the arresting officer's testimony was taken, and thereafter denying the motion with prejudice, the trial judge indicated that he was not relying on appellant's withdrawal. Nor am I able to find in the circumstances of the hearing upon the second motion any waiver of appellant's right to move for suppression of the money seized from his person. And as I read the effect of this

court's decision in Williams v. United States, 1956, 99 U.S.App.D.C. 161, 237 F. 2d 789, appellant had standing to move for suppression as soon as it appeared from the arresting officer's testimony at the hearing on the first motion that the appellant was in possession of the evidence sought to be suppressed. See also my dissenting opinions in Christensen v. United States, 1958, 104 U.S.App.D.C. 35, 37–44, 259 F.2d 192, 194–201; and Brandon v. United States, —— U.S.App.D.C. ——, 270 F.2d 311, and the dissenting opinion of Judge Fahy in the latter case. In Brandon the position of the majority of the court seems to be that the defendant has a broader basis for standing to suppress evidence seized pursuant to an arrest than he has with respect to evidence seized pursuant to a search warrant. —— U.S.App.D.C. at page ——, n. 5, 270 F.2d at page 313, n. 5. I see no basis either in principle or authority for such a distinction. But even if that distinction were valid, it would not militate against appellant's standing in the present case. On the contrary, it would support his standing. For here the warrant was an *arrest* warrant, and my colleagues sustain the seizure of the evidence on the theory that it was made pursuant to a warrantless arrest on probable cause.

Since I think appellant had standing to move for suppression, the question arises whether the search was made in connection with a lawful arrest. The arrest was made upon warrant issued upon Officer King's affidavit which merely described appellant and stated that "on or about July 23, 1957, at Washington, District of Columbia [appellant] did unlawfully possess and sell a narcotic drug, to wit, heroin. * * * "

It is clear that the search and seizure cannot be sustained on the basis of this warrant, since it is plainly defective under the ruling of the Supreme Court in Giordenello v. United States, 1958, 357 U. S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The Government does not argue to the contrary but contends that there was probable cause for the arrest apart from the warrant.

As for probable cause, the Government relies upon the knowledge of Officer Aiken (the arresting officer) of the July 23 and August 8 transactions in which appellant allegedly sold narcotics through an intermediary to Officer King. That Officer Aiken did have some knowledge of these transactions is clear. However, in view of the rulings of the District Court that appellant lacked standing to seek suppression, there was no occasion at the pre-trial hearings or at trial for the prosecution to establish, or for the defense to inquire into and challenge by cross-examination, the extent of his knowledge prior to the arrest.[4] Therefore we are not in a position to determine from the record whether or not the arresting officer was aware of sufficient facts to warrant a decision on his part that arrest was justified on probable cause.

There is also in the record evidence indicating that at the time of making the arrest, Officer Aiken was thinking solely in terms of exercising the authority vested in him by virtue of the warrant—that is, that he never exercised any judgment

as to probable cause. Since arrest on probable cause assumes such an exercise of judgment, the Government would hardly be in a position to justify an arrest where the arresting officer considered nothing other than his power to execute a warrant. See, e. g., Poldo v. United States, 9 Cir., 1932, 55 F.2d 866, 869; Kroska v. United States, 8 Cir., 1931, 51 F.2d 330, 333. See also Wrightson v. United States, 1955, 95 U.S.App.D.C. 390, 222 F.2d 556. These questions require development before the District Court of all the relevant facts with an opportunity for properly directed cross-examination by the defense.[5]

For the foregoing reasons, I would send the case back to the District Court for a special hearing on the issue of probable cause for the arrest without a warrant.[6]

## II.

I would also reverse for new and separate trials on the indictments herein.

When this case was called for trial, the presiding judge called counsel to the bench and asked if the indictments were

4. As to the August 8 transaction, the facts known to Officer King before the arrest (at least as far as his testimony indicated) would seem insufficient, standing alone, to justify appellant's arrest. There was some vague testimony elicited on cross-examination at trial indicating that Officer King and Warren had sought out appellant as a source of the narcotics which Officer King pretended to want. But the main evidence linking appellant to the sale, prior to his arrest, was the fact that he was standing at the doorway of the poolroom and walked in with Warren. Officer King was apparently aware, however, that the poolroom was then occupied by several other suspected narcotics offenders. Assuming that Officer Aiken was aware of all these facts, and knew that appellant was suspected of having made sales of narcotics previously, it is still doubtful that his knowledge would have constituted probable cause for arrest. It would seem that a reasonable man would wish to have more facts before risking the arrest of an innocent man.

5. Although not ripe for decision upon this record, the further question arises concerning the extent to which police officers, in attempting to justify an arrest on an alternative ground of probable cause, should be permitted to rely upon facts which were known to them at the time a warrant was sought but which were not revealed to the commissioner.

6. In Giordenello, supra, the Government in the two lower courts had defended the legality of the arrest by relying entirely on the validity of the warrant. The Supreme Court, in refusing to entertain the alternative justification of probable cause, pointed to the defendant's right to an adequate opportunity to respond to the new theory. The Court further held that there were no "special circumstances" warranting a remand for a special hearing on the issue of probable cause. However, in the present case, the Government has never had the opportunity which it had in that case to present its alternative basis for justifying the arrest, inasmuch as the ruling by the District Court that appellant lacked standing to move to suppress foreclosed consideration of the legality of the arrest. Therefore remand for the special hearing seems appropriate.

consolidated. Each replied in the affirmative.[7] As the trial proceeded, it should have become apparent, even if it had not been previously, that the evidence as to each separate indictment tended improperly to corroborate the evidence as to the other indictments. Nevertheless, at the conclusion of the trial, defense counsel, in his argument to the jury, failed to point out the necessity for appropriate limitations on the use of the evidence. The trial judge was not requested to and did not give instructions to that effect. There was no objection to the instructions. Appellant was convicted on all three indictments.

In my opinion, the failure to instruct the jury as to the limitations on the use of evidence constituted "plain error" (Rule 52(b), Fed.R.Crim.P.), requiring reversal, even if the consolidation for trial did not.

"It is doubtful whether separate and distinct felonies, involving different parties, not arising out of the same transaction or dependent upon the same proof, should ever be consolidated." Kidwell v. United States, 1912, 38 App.D.C. 566, 570.[8] The prejudice arising from such consolidation here is readily apparent. Appellant's defense with respect to the third indictment challenged the testimony of Officer Aiken that the bottle of narcotics had come from the appellant's pocket. The facts were such that Officer Aiken could have been thought to have made an honest error. But the case against appellant was no doubt fortified by the evidence that he had previously sold narcotics—in other words, that he was the kind of person who could be expected to possess narcotics. Thus the evidence of the prior sales tended to corroborate improperly Officer Aiken's testimony that appellant possessed narcotics at the time of arrest. It follows that consolidation did result in serious prejudice to the defense on the third indictment. It likewise prejudiced the defense on the other two indictments. For example, the evidence of possession of narcotics at the time of arrest tended improperly to corroborate the evidence of prior sales, since it established a source of supply. Moreover, the evidence of each sale tended to corroborate the evidence of the other by establishing a pattern of criminal behavior. Yet, if the indictments had been tried separately, the prosecution would have been limited with respect to each indictment to the evidence directly relevant to it.

Since the trial court itself asked to be advised concerning consolidation, the question arises whether responsibility for failure to apprise the court of the facts affecting consolidation may be ascribed to the prosecutor as well as to defense counsel. But wherever the fault may lie, the inescapable fact is that consolidation deprived appellant of a fair trial. If defense counsel's acquiescence in the consolidation was a matter of "trial tactics"—that is, if it was based on an informed and deliberate choice—then appellant should not be permitted to object at a later date. See Wyche v. United States, 1951, 90 U.S.App.D.C. 67, 193 F.2d 703, certiorari denied 1952, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702. The concept of "trial tactics," however, implies an acceptance of a disadvantage for the purpose of acquiring some advantage. In the instant case it is hard to see how consolidation could possibly have been of any significant advantage to appellant whereas the substantial prejudice to his defense should have been obvious.

---

7. There is nothing in the record to indicate why the indictments were presented for trial at the same time, or why defense counsel consented to consolidation. The explanation may lie in the fact that joint consideration of the evidence relating to all three indictments was not only sensible but necessary at the pretrial hearings on the motions to suppress, in view of the relevance of all this evidence to the questions which might have been raised in those proceedings. It seems reasonable to infer that this pretrial consolidation was continued at trial without reconsideration of the entirely different factors bearing on the appropriateness of consolidation for the purposes of trial.

8. See also Dunaway v. United States, 1953, 92 U.S.App.D.C. 299, 205 F.2d 23.

But, even if we assume that acquiescence in the consolidation was based on some calculated advantage, it would not excuse the failure to instruct the jury that evidence relating to one indictment was not to be relied upon to support the other indictments. One reason for sustaining a conviction notwithstanding a consolidation which proves fatally prejudicial to the defense and which, in retrospect, should not have been made is that the judge has the power and, in a proper case, the duty to instruct the jury in such a way as to mitigate the prejudice. Where the prejudice has already occurred, no one can suggest that defense counsel's failure to request a mitigating instruction can have been a trial tactic. We must recognize it for what it was—an obvious blunder. The failure to correct such seriously unfair prejudice was, in my opinion, plain error "affecting substantial rights." Fed.R. Crim.P. 52(b).

III.

I think another matter requires notice although not raised below or on appeal. It relates to the delay between arrest and trial. Sixth Amendment, Fed.R.Crim. P. 48(b). Upon consideration of supplemental memoranda filed by the parties at our request, I conclude that the matter is one "affecting substantial rights" of appellant (Fed.R.Crim.P. 52(b)) and reflects upon the fair and efficient administration of criminal justice.

Appellant has been in jail ever since he was arrested on August 8, 1957, because he has been unable to provide the required $3500 bail bond. He was not indicted until November 4, 1957—88 days after arrest. He was not tried until June 12, 1958—more than ten months after arrest and more than seven months after indictment.

Shortly after his indictment on November 4, 1957, appellant's trial was set for December 10. As to the subsequent delays, the record tells the following story:

| Trial Date | Continued to | Reason | Delay |
|---|---|---|---|
| 12/10/57 | 1/22/58 | Courts engaged | 43 Days |
| 1/22/58 | 2/12/58 | Government request—illness of Officer Aiken | 21 Days |
| 2/12/58 | 2/27/58 | Government request—Government counsel engaged in another case | 15 Days |
| 2/27/58 | 3/19/58 | Court recessed—Death of Judge Kirkland | 20 Days |
| 3/19/58 | 3/27/58 | Defendant's request—illness of counsel | 8 Days |
| 3/27/58 | 4/30/58 | Government request—Government counsel engaged in another case | 34 Days |
| 4/30/58 | 5/20/58 | Government request—Government counsel engaged in another case | 20 Days |
| 5/20/58 | 6/11/58 | Defendant's request—to engage other counsel | 22 Days |
| 6/11/58 | 6/12/58 | Government request—Government counsel engaged in another case | 1 Day |

Thus, as appellant's supplemental memorandum states:

"* * * two postponements involving an aggregate delay of 30 days were obtained by appellant or his counsel; and that the remaining delay of an aggregate of 186 days is broken down into the following categories: Initial delay, 32 days; delays occasioned by courts being engaged in other trials and in recess due to death of Judge Kirkland, 63 days; delays at Government's request due to illness of witness and counsel being engaged in trial of other cases, 91 days."

I think the foregoing clearly establishes that appellant was deprived of his right to a speedy trial. See my dissenting opinions in Porter v. United States, —— U.S.App.D.C. ——, 270 F.2d 453; and King v. United States, 105 U.S.App.D.C. 193, 265 F.2d 567, certiorari denied 1959, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986, where the majority carefully pointed out that "the prosecutor had no part in any of the delays." Id., 265 F.2d at page 568.