**Wilbert KING, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14392.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 6, 1958.

Decided Jan. 8, 1959.

Certiorari Denied May 18, 1959.
See 79 S.Ct. 1124.

Mr. Albert Beitel, Washington, D. C. (appointed by this Court) for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Edgar T. Bellinger, Asst. U. S. Atty., were on the brief, for appellee. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

PRETTYMAN, Chief Judge.

Our appellant, King, was indicted, tried and convicted for assault with a dangerous weapon. The appeal is *in forma pauperis*, and his counsel here was appointed by this court. He had court-appointed counsel in the District Court.

The essence of the appeal is an attack upon the method by which the calendar of criminal cases is handled by the District Court. We look at the system, then at the facts here, and then at the points of argument.

Indictments are customarily returned in this jurisdiction on Mondays. Some 1,200 or 1,300 criminal cases pass through the court annually on indictments, and so an average of twenty-five are initiated each week. Counsel are appointed at once for the indigent who want counsel. On Friday the indicted persons are arraigned and the cases are given trial dates. This is a special feature of the system. After arraignment each case always has a designated trial date. Obviously each Friday's cases take their places on the trial calendar after the cases already on that calendar. Equally obviously the assignment judge, or commissioner, has no way of knowing how many of a given Friday's cases will eventually be tried or how long each trial will take. No one has ever been able to predict with any appreciable accuracy the length of a series of trials, or indeed even the length of a series of arguments. In order to make full use of the time of judges and jurors and to get on with the mass of business, the assignment authorities attempt to prevent a "breakdown", that is, having judges and jurors ready to try cases but no cases

to be tried. Many cases do not reach trial on the assigned dates, because continuances are requested and granted and pleas of guilty are entered. So the authorities err on the side of assigning too many cases rather than too few. As a result, sometimes a case is assigned for trial on a given day but that day comes and goes and all the judges in the criminal courts are occupied with trials of other cases, either those extended over from prior days or cases higher on the day's list. The unfortunate case caught in this predicament must be continued. Here we reach the nub of the problem: Continued to when? If it be continued to the next day, some case on that day's calendar must go over, because every day's calendar is full. The case thus put over squeezes a case off the next day's calendar, and so on in chain reaction; and the whole calendar becomes an expanding-contracting organism of no definite character at all. If our hypothetical specimen case be continued to the next day open for calendar assignments, that day may be a month away and the indicted person who anticipated trial on a given day is left to a long wait. At the time of the events with which we are here concerned, the authorities usually followed the latter course.

We look now at the facts in the case before us. The alleged offense occurred October 27, 1956. It was a cutting in a pool hall. From beginning to end, that is, from his arrest to his testimony upon trial, King maintained that he cut the victim (named Jack Smith) accidentally, that he was in a fight with another man over some money and did not know Jack Smith or how he was cut. In any event the police arrived promptly and King was locked up. Next day in Municipal Court he was charged, identified and held. On December 3rd an indictment was returned. Counsel was appointed, and on December 7th King was arraigned. The case was set for trial January 14th but was continued to January 28th on the defendant's motion.

Then began the series of events which poses our problem. On January 28th, February 27th, March 20th, and April 15th the case was scheduled for trial but was continued for the reason, in the parlance of the courthouse, "no court available". One of these continuances (March 20th to 21st) was for only one day, but the others were for thirty, twenty-one, and twenty-eight days. Meantime King's attorney became ill, and a continuance was granted him on that account. That continuance was from March 21st to April 15th. Then, on April 26th, King himself, *pro se*, filed a motion "for direct acquittal", which was heard on May 3rd and denied. The same day King moved the court to "appoint me another attorney". This the court did on May 9th. King came to trial on June 3, 1957. This was about six months after he was indicted. The continuances began on January 14th. From that date to June 3rd is something less than five months.

Certain features of the foregoing sequence of events are to be noted. First of all, the prosecutor had no part in any of the delays. He never requested or occasioned a continuance. Indeed it is easy to imagine that the edge of his case might have been dulled by the repeated vain excursions to the courthouse by the eyewitnesses presented by the Government, the only witnesses (save King) in the case. King has not claimed an inaccuracy in their account. In the second place, of the seven continuances three were on King's behalf; of the 140 days which elapsed, some 60 days of delay were requested or occasioned by King himself. In the third place, King does not allege any prejudice by reason of the delay. As we have noted, there were a number of eyewitnesses; the accounts of all, including King, tallied substantially; no one denied that King cut Smith. The only issue was whether the cutting of Smith was pure accident or the result of a furious, blind slashing-about.

King says the granting of a succession of automatic continuances, without the presence or consent of either himself or

his counsel, violated his constitutional right to a speedy trial.

No doubt this problem lies at a spot where the ideal clashes head-on with the practical. Ideally, maybe every accused person would be indicted or released the day he is arrested and, if indicted, would be tried the day after indictment. Even that arrangement, however, would not be deemed ideal by those indicted persons whose interests are best served by delay,—and there are doubtless many such. In any event practicalities prevent any such Utopia—if it be Utopia. Lawyers often need time for preparation, and witnesses frequently need to be found and, when found, must have advance notice to attend. Moreover cases have to take their turn. The case on trial is entitled to deliberate consideration; the others on the calendar stack up. At the same time, too much heed to practicalities may encroach upon the individual's rights. If the legislature were to refuse to install sufficient judicial machinery to perform the judicial tasks, it might be necessary to turn some accused persons loose. But the present situation is far from that hypothetical crisis. The problem here is to dispose of the present number of criminal cases through use of a reasonable amount of judicial machinery. A method of disposition which reasonably accommodates practicalities is not illegal.

We think the delay here (a total of 140 days, 60 days of which was requested by defense counsel) between arraignment and trial, on account of a crowded calendar, is not such a prolonged period as to be a denial of speedy trial in a constitutional sense. The fact that the delay was in successive bits instead of by one long postponement is immaterial to the problem of constitutionality, where the off-and-on program has no harmful impact on defense witnesses.

Cases such as United States v. Provoo,[1] Taylor v. United States,[2] United States v. McWilliams,[3] and United States v. Chase,[4] cited by appellant, are not applicable here, because the delays involved in those cases were attributable to the prosecution.

In any procedural practice short of the ideal, it is easy to find some element which could be called illegal. But, where a method is chosen because it meets the practical problems of a court and is clearly within the realm of the reasonable, we do not advance the cause of justice by harsh condemnation. We have neither the data nor the means with which to devise another method of putting an average of five new cases a day on the District Court's calendar. Sometimes we are compelled to declare a procedural practice void without even considering possible alternates; we do not feel so compelled here. We do suggest that the District Court give the problem continuing attention, especially in respect of defendants held in jail. Indeed we were told at oral argument that experimental variations from the practice here involved were then already under way. We find no reversible error in this phase of the present case,[5] despite the earnest and intelligent presentation by counsel who undertook this duty at the court's behest.

It is argued to us that our view runs contra Rule 50 of the Criminal Rules, 18 U.S.C.A. But that rule provides merely that criminal proceedings shall be given preference, and even so the preference is required to be only "as far as practicable." In this jurisdiction criminal proceedings not only have a preference; they have a calendar all their own, and four, five, or even six

---

1. 17 F.R.D. 183 (D.C.D.Md.1955), affirmed 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

2. 99 U.S.App.D.C. 183, 238 F.2d 259 (D.C. Cir.1956).

3. 82 U.S.App.D.C. 259, 163 F.2d 695 (D.C. Cir.1947).

4. 135 F.Supp. 230 (D.C.N.D.Ill.1955).

5. Cf. Brown v. United States, Misc. No. 925, D.C.Cir., Feb. 6, 1958, certiorari denied 357 U.S. 909, 78 S.Ct. 1154, 2 L.Ed. 2d 1158 (1958).

judges sit every day on criminal cases. On the constitutional question it is urged upon us that, when a case is delayed for 140 days for whatever cause save the request of the defendant himself—even because of a crowded calendar,—the indictment must be dismissed. We would hesitate to venture a prediction as to the effect of such a rule upon the federal judicial system as a whole, especially in those sections where one or two district judges must cover wide territories and hold court at several places. Long periods necessarily elapse between the times of holding court in such instances. By way of example, in the Northern District of New York there are two judges, who sit at six different places, with one term a year scheduled at each place. In the year 1957–58 they handled some 190 criminal cases and 490 civil cases. The Western District of Wisconsin has only one judge, who holds court at five different places, once a year at four of them and twice a year at the other. Last year he handled 110 criminal cases and about 200 civil cases. The "speedy" in the Constitution must be construed with some cognizance of physical realities.

It is argued that the view we support proceeds from the premise that none of the delay in the case at bar was caused by the prosecutor, an inadequate premise. Our reasoning does not so proceed. The non-involvement of the prosecutor is merely one of the features of the case.

We think appellant reveals the weakness of his argument in not suggesting possible realistic alternative methods of handling a calendar of 1,200 or 1,300 criminal cases a year. The problem is not whether any given method is idealistically perfect; no method yet devised is perfect. The problem is whether the method in use is reasonable in view of the hard facts. Surely we are not to go back to the system wherein an offender on Tuesday was tried on Wednesday and hanged on Thursday. It is equally clear that a mere continuance from day to day is not necessarily desirable. The indicted persons displaced from assigned places on the calendar by those held over from the day before are entitled to justice. The repeated attendance of witnesses, defense as well as prosecution, day after day for no purpose, does not make for greater justice. These are among the many factors which must be considered. The argument that the method under review at the moment does not achieve perfection falls short. The problem, as we see it, is one to be solved by a process permitting consideration of all facts and all factors, such as inquiry or study by the District Court itself; it is not to be solved by blanket negations by this appellate court. An extreme case might require reversal, but the present case is not such a one.

In Williams v. United States [6] we quoted from the opinion of the Supreme Court in Beavers v. Haubert [7] as follows:

"* * * The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

King says he is entitled to reversal of his conviction, because neither he nor his counsel was physically present when the several continuances were ordered. We think a continuance for reasons of court necessity, not initiated or sought by either party, is not such a part of the proceedings in a case as to require the physical presence of counsel. The defendant's case was not prejudiced, even though he may have suffered hardship from the delay. And, of course, a motion to advance the date of trial was always available.[8] King also complains

6. 102 U.S.App.D.C. 51, 53, 250 F.2d 19, 21 (1957).

7. 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905).

8. See James v. United States, 104 U.S. App.D.C. 263, 261 F.2d 381, and cases there cited; also United States v. Lustman, 258 F.2d 475 (2 Cir., 1958), cer-

that he was not allowed to argue the second point urged in his "motion for direct acquittal". But we know of no rule which requires that a litigant be granted time and opportunity to argue orally all the points he raises.

Affirmed.

BAZELON, Circuit Judge, with whom EDGERTON, FAHY and WASHINGTON, Circuit Judges, join (dissenting).

We are dealing here with a substantial delay of trial incident to a calendar system that was employed by the District Court. Under that system the Assignment Commissioner set for trial for a given day more cases than could probably be reached on that day. Moreover, since the trial calendar was prepared three or four weeks in advance, if a case was not reached on the scheduled date, the "next available date" was usually three or four weeks off. When that date arrived, the case could, by operation of the system, be postponed again to a new "next available date." Meanwhile, other cases which became "ready" later would have been tried. The postponement process could theoretically be repeated without end, so that the case would be continued indefinitely.[1]

In the instant case, appellant was arrested on November 16, 1956, and was tried and convicted on June 3, 1957. He had been confined in jail six and one-half months between arrest and trial because he could not raise bail.

Trial was first set for January 14, 1957, but the following continuances were ordered:

| Date of Continuance | New Trial Date | Reason [2] |
|---|---|---|
| 1.  January 14, 1957 | January 28, 1957 | "On motion of defendant" |
| 2.  January 28, 1957 | February 27, 1957 | "No court available" |
| 3.  February 27, 1957 | March 20, 1957 | "    "    " |
| 4.  March 20, 1957 | March 21, 1957 | "    "    " |
| 5.  March 21, 1957 | April 15, 1957 | "Defendant's attorney ill" |
| 6.  April 15, 1957 | May 13, 1957 | "No court available" |
| 7.  May 9, 1957 | June 3, 1957 | "Referred for appointment of [new] counsel" [3] |

tiorari denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

1. In practice, the Government informs us, when the District Court saw that a case which it could not reach on the scheduled day had already been automatically continued two or three times, it would depart from its routine and set the case for trial on the very next day rather than the next "available" date. Thus, in the instant case, when trial could not be had on March 20, 1957, the District Court, noting that there had already been two automatic continuances for a total of 51 days, set the trial for March 21, 1957. We observe, however, that there was no consistent practice of limiting the number or length of these automatic continuances. On April 15, 1957, appellant's trial was again automatically continued for 28 days.

2. As shown by the docket.

3. Appellant had written a letter to the court asking for a change of counsel. The record does not show what the letter said, but, on the strength of it, the court ordered a hearing. At the hearing appellant testified:

"* * * I wrote him [the original lawyer] a couple of times and can't get in touch with him. The only time I seen him was when I had the motion."

The motion referred to is one made and argued *pro se* by appellant, although the lawyer was in the courtroom. Appellant's statement was not denied by his counsel, who said only, "I feel it is in his best interest that another counsel be appointed." The court thereupon released counsel and put the case over to June 3, 1957, to allow time for a new lawyer to be appointed and to familiarize himself with the case.

Of the 140 days that appellant's trial was delayed, the four "no court available" continuances, which occurred by operation of the District Court's calendar system, accounted directly for 80 days and indirectly it appears for 126 days because, but for them, appellant probably would have been tried on or about January 28, 1957.

The Government's position, basically, is that appellant may not challenge the District Court's calendar system. While that court, of course, has inherent power to control its calendar, the system it adopts must have regard for the rights of an accused and must be consistent with the requirement of Rule 50, Fed.R. Crim.P., that "Preference shall be given to criminal proceedings as far as practicable."

The Government says this calendar system was highly "practicable" in that, by utilizing judicial time efficiently, it assured trial of the maximum number of cases. But the Government concedes that the system often produced substantial postponement of the trial of a given case.

It appears clear to me that appellant was not brought to trial in a manner consistent with Rule 50. The requirement of that Rule for preference for criminal proceedings applies to specific cases as well as to the docket in general. Indeed the preference cannot be made effective except in specific cases. Here the appellant was in jail, as if serving sentence, though not tried and though presumed to be innocent until convicted. He was not free on bail bond.[4] The system accordingly operated to the prejudice of appellant by depriving him of liberty for substantial periods of time, not because of guilt but because of the system, and without either representation by counsel or appearance *pro se* in connection with the continuances.

In a district where only one judge holds trials, long delays of both criminal and civil trials are inevitable, but, so long as preference is "given to criminal proceedings as far as practicable," Rule 50 is not violated. In the District of Columbia, however, there are fifteen district judges and, as the majority points out, "four, five, or even six judges sit. every day on criminal cases." In such a district, a calender system which prevents a criminal case otherwise ready from coming to trial for months violates the rule. The argument that the system in question is a practical necessity is refuted by the fact that the judges find it possible to depart from it when they think there has been quite enough delay, and further by the fact that they are reportedly able to do without it altogether in cases where the defendant is not free on bail.[5]

Since, in my view of the case, the substantial delay of appellant's trial violated Rule 50, it is unnecessary to consider whether or not his constitutional right to a speedy trial has also been violated. Since the majority of the court reaches that question, however, and disposes of it in what seems to me too summary a fashion, I feel called upon to state wherein I consider them to be in error.

The majority notes that none of the delay of appellant's trial was caused by the prosecutor, and reasons, at least in part from that fact,[6] that the Sixth Amendment is inapplicable. But the application of that amendment, provid-

---

4. We are informed the system we have described has been discarded in respect of prisoners in this situation and is no longer applied to them. We have been informed that, since May 5, 1958, any such case that is called on the criminal daily assignment calendar and marked "Ready" is carried from day to day till reached for trial or otherwise disposed of.

5. See notes 1 and 4 supra.

6. The majority also appears to conclude that the Sixth Amendment does not require a calendar system which is idealistically perfect," but only one which is "reasonable in view of the hard facts." While I agree that the constitutional right to speedy trial is consistent with necessary delays inherent in the processes of justice, I cannot agree that it permits processes that make for unnecessary or avoidable delay.

ing that "the accused shall enjoy the right to a speedy * * * trial," does not turn on the question of responsibility. Even if no agency or instrumentality of the Government is responsible for the delay, where there has *in fact* been a substantial delay not of the defendant's own choosing—*i. e.*, where he has not waived his right to a speedy trial—there has *in law* been a denial of a speedy trial. See the dissenting opinion of Judge Fahy in Askins v. United States, 97 U.S.App.D.C. 407, 412, 231 F.2d 741, 746 (1957). Certainly the fact that the fault lies with the calendar system employed by the District Court rather than with the prosecutor does not prevent application of the Sixth Amendment. The right to a speedy trial guaranteed by that amendment means a trial without "delays manufactured by the ministers of justice." Black, Constitutional Law § 266, quoted in United States v. Provoo, 17 F.R.D. 183, 197 (D.C.D.Md. 1955), affirmed 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). The amendment was intended not only to prevent delays manufactured by the prosecutor, but to require "the judicial tribunals to proceed with reasonable dispatch in the trial of criminal prosecutions." Shepherd v. United States, 163 F.2d 974, 976 (8 Cir., 1947).

The majority also states that appellant "does not allege any prejudice by reason of the delay." I must respectfully differ, for I read in appellant's brief clear allegations of prejudice—not only the obvious and very serious prejudice that he was kept in jail for months without trial to suit the convenience of others, but also the probable prejudice resulting from the effect of delay upon the memories of witnesses and their willingness to testify. Moreover, I agree with the conclusion in Provoo, supra, that "prejudice is presumed, or necessarily follows, from long delay" and that this is true *a fortiori* when the defendant is imprisoned during the delay. 17 F.R.D. at page 203.

The Government argues that appellant may not claim his Sixth Amendment right because he failed to demand a speedy trial. The cases requiring such a demand as a condition of invoking the constitutional right to speedy trial [7] assume a situation where such a demand can serve a purpose. To insist upon the demand in the circumstances of this case would disregard reality. There was no time, during the long delay, when the trial was not set on schedule. How could he have demanded a speedy trial when he was constantly promised one? The date set for his trial was never as much as a month off. The defect was not that the court failed to grant appellant a speedy trial date, but that it granted him too many speedy trial dates and failed to keep them.

When appellant was sentenced, on June 3, 1957, to imprisonment for a term of twenty months to five years, he had already been in jail over six months. He has now been imprisoned over two years. Although I would not lay down a general rule as to the proper remedy in cases adversely affected by the calendar system here in question, in the full circumstances of this direct appeal from the conviction I would hold not only that the conviction should be reversed but also that the indictment should be dismissed under the provisions of Rule 48(b), Fed. R.Crim.P., authorizing dismissal "if there is unnecessary delay in bringing a defendant to trial * * *."

---

7.  Fowler v. Hunter, 164 F.2d 668 (10 Cir., 1947), certiorari denied 333 U.S. 868, 68 S.Ct. 785, 92 L.Ed. 1146 (1948); Collins v. United States, 157 F.2d 409 (9 Cir., 1946); Pietch v. United States, 110 F.2d 817, 129 A.L.R. 563 (10 Cir.), certiorari denied 310 U.S. 648, 68 S.Ct. 1100, 84 L.Ed. 1414 (1940); and cases cited therein.