Joseph W. **HUNTER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Nos. 17780, 17781.

United States Court of Appeals
District of Columbia Circuit.

Argued Aug. 20, 1963.

Decided Sept. 26, 1963.

Miss Mabel D. Haden, Washington, D.
C. (appointed by this court), for appellant.

Mr. Gerald A. Messerman, Asst. U. S.
Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker,
Asst. U. S. Atty., were on the brief, for
appellee.

Before WILBUR K. MILLER, BASTIAN
and McGOWAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

On October 30, 1948, the appellant shot
and killed two men and wounded three
others while he was perpetrating a robbery. As a result, two charges of first
degree murder and three of assault with
a dangerous weapon were contained in
two indictments returned against him
January 31, 1949. The District Court
ordered him examined by two psychiatrists who reported on February 11, 1949,
that appellant was incompetent to stand
trial. The court on March 11, 1949, pursuant to a petition therefor filed by the
United States Attorney, ordered a lunacy
inquiry as provided by § 24–301, D.C.
Code (1940 Supp. VII).[1]  At the inquiry

1. Section 24–301 then read as follows:
 "* * * [W]henever a person is indicted or is charged by an information for
an offense, or is charged in the juvenile
court of the District of Columbia with
an offense, and before trial or after a
verdict of guilty, it shall appear to the
court, from prima facie evidence submitted to the court or from the evidence
adduced at the trial, that the accused is
then of unsound mind, the court may order the accused committed to the Gallinger Municipal Hospital for a period
not exceeding thirty days, which period

may be extended by the court for good
cause shown, for examination and observation by the psychiatric staff of said
hospital. If, after examination and observation, the said psychiatric staff shall
report that in their opinion the accused
is insane, the court may cause a jury
to be impaneled from the jurors then in
attendance on the court or, if the regular
jurors have been discharged, may cause a
sufficient number of jurors to be drawn to
inquire into the sanity of the accused, and
said inquiry shall be conducted in the
presence and under the direction of the

Hunter was found to be an insane person and was removed to St. Elizabeths Hospital.

A certificate of the superintendent of the hospital that Hunter had recovered his reason and was then of sound mind was filed in the District Court May 1, 1952.[2] Thereupon the court ordered an examination by two independent psychiatrists who reported August 7, 1952, that Hunter was of sound mind at that time. Several continuances were granted on Hunter's application.[3]

Finally, on March 24, 1953, with counsel present, the appellant withdrew his pleas of not guilty to the two indictments and entered pleas of guilty to two charges of manslaughter. Thereupon the court sentenced him to imprisonment for a term of from five to 15 years on each indictment, the sentences to run consecutively.

Almost nine years later—on March 7, 1962—while a prisoner in the United States Penitentiary at Atlanta, Hunter filed a motion under 28 U.S.C. § 2255 to vacate his sentences.[4] He alleged that there had been no judicial adjudication of his competency to stand trial after the

judgment declaring him to be an insane person and that, therefore, he was legally incompetent to stand trial when his pleas of guilty were accepted in 1953; that he was in fact incompetent at that time;[5] and that he had not had effective assistance from his counsel.

New counsel was appointed to represent Hunter and he was brought from Atlanta to the District of Columbia for the hearing on his § 2255 motion, which was held March 21, 1963. He abandoned the allegation of ineffective assistance of counsel and relied solely on the contention that the absence of a prior judicial adjudication of competency rendered his sentences invalid. It turned out, however, that Hunter did not want an evidentiary hearing, but merely an opportunity to argue his legal theory that, in view of the fact that he had been committed as an insane person and had not subsequently been judicially found to have recovered his sanity, the court erred in accepting his pleas of guilty. He asserted that he would offer no evidence and that he was "standing on the law instead of any facts at all." Moreover, he objected to the in-

court. If the jury shall find the accused to be then insane * * * the court may certify the fact to the Federal Security Administrator, who may order such person to be confined in the hospital for the insane * * *."

2. This was pursuant to § 24–303, D.C.Code (1951), which is as follows:
 "When any person confined in the hospital for the insane, charged with crime and subject to be tried therefor or undergoing sentence therefor, shall be restored to sanity the superintendent of the hospital shall give notice thereof to the justice holding the criminal court and deliver him to the court according to its proper precept."

3. For example, on February 17, 1953, Judge Holtzoff entered the following order:
 "Motion filed February 9, 1953, to dismiss indictments is denied. The case has been set for trial and has been continued several times on the application of defendant's counsel."

4. The motion, which was filed pro se and personally signed by Hunter, expressly admitted that he committed two murders

and three woundings during the perpetration of an armed robbery, and showed that on March 7, 1962, he had an exact recollection of his criminal activities on October 30, 1948:
 "On October 30, 1948, within the District of Columbia, movant perpetrated the armed robbery of a theater manager during which, and immediately following, a wild shooting fray occurred in which movant killed the said theater manager, James E. Washington, and one Herbert Smith, and wounded three other individuals, all with a .35 caliber automatic rifle.
 "Movant escaped from the scene, hid the rifle, went to Baltimore for two days, then returned to Washington, where he was apprehended at about One A.M., the morning of November 3, 1948, and committed to the D. C. Jail."

5. This allegation is contrary to Hunter's own statement made shortly before he pleaded guilty on March 24, 1953. On February 5, 1953, he filed his affidavit in support of his application to proceed in forma pauperis in which, inter alia, he said:
 "I have recovered, and is [sic] no longer of unsound mind."

troduction of evidence by the Government that he was competent to stand trial when he pleaded guilty.

A hearing was held, nevertheless, at which the Government showed it was the unanimous opinion of the doctors present at a St. Elizabeths' medical staff conference on March 31, 1952, that appellant was able to understand the nature of the charges against him and to assist counsel in the presentation of his defense. The District Court denied the motions to vacate the sentences and these appeals followed.

The same situation was presented in Haislip v. United States [6] except that Haislip did not plead guilty but was tried and convicted. As does Hunter in this case, Haislip contended that because of his previous commitment as an insane person, he could not be tried unless and until he had been adjudicated sane. We concluded that the governing procedure was prescribed in §§ 24–301 and 303, D. C.Code (1940),[7] and said:

"The lunacy inquiry of July 26, 1939, was for the purpose of determining whether the defendant was then capable of understanding the nature and objects of the proceedings so as properly to conduct his defense. The verdict of insanity spoke as of that date and was a legal determination that appellant was not then mentally qualified to stand trial. When, thereafter, he was restored to sanity, the certificate of the superintendent

to that effect removed the previous bar. The sole effect of these sections is, in a proper case, to suspend the criminal proceedings during the period of insanity. The jurisdiction of the court continues, and when sanity is restored the case may proceed as if the interregnum had not occurred. Wagner v. White, 38 App. D.C. 554, 558.

\* \* \* \* \* \*

"Without more, therefore, we are of opinion that, upon the discharge of an accused from the hospital as cured and in the absence of anything showing the invalidity of the certificate of the superintendent, the court is required to proceed with the trial on the suspended criminal indictment, and no further proceedings on the question of sanity are necessary. \* \* \*"

The Haislip decision seems to us to be dispositive of the present case. It construed § 24–301, D.C.Code at it then existed, and § 24–303—the statutes with which we are concerned here.[8] It held flatly that an unchallenged certificate of the hospital superintendent, such as was issued with respect to Hunter, obviates the necessity for further proceedings on the question of sanity.

The case of Gunther v. United States,[9] Hunter's chief reliance on these appeals, does not require reversal, even if it be taken to be applicable.[10] Under its holding Hunter would be entitled to no more

---

6. 76 U.S.App.D.C. 91, 129 F.2d 53 (1942), decided by Chief Justice D. Lawrence Groner and Associate Justices Justin Miller and Fred M. Vinson. (We were called justices until 1948).

7. After the Haislip decision and before Hunter's lunacy inquiry, § 301 was amended in a manner not material here. Section 303 was not changed.

8. Section 24–301 was amended in 1945 (59 Stat. 311) in a manner not relevant for present purposes.

9. 94 U.S.App.D.C. 243, 215 F.2d 493 (July 1, 1954). See, also, Contee v. United States, 94 U.S.App.D.C. 297, 215 F.2d 324 (July 15, 1954).

10. An assumption of applicability is doubtful at best. Gunther and Contee construed 18 U.S.C. §§ 4244 and 4246, portions of a statute enacted September 7, 1949, (63 Stat. 686) some three years after Hunter was adjudicated insane under § 24–301, D.C.Code (1940 Supp. VII). Although they hold that a judicial determination of a recovery of reason is essential to a trial of a prisoner previously adjudged insane, they deal with different statutes, and neither purports to overrule the Haislip case. It is significant in this latter regard to recall our established practice to the effect that a division of the court will not overrule a recent decision of another division; that is an appropriate function of the full bench. For a view of Gunther contrary to that

than a *nunc pro tunc* hearing on the question of his competency to stand trial when he entered his pleas of guilty. Such a hearing was in fact held in this case, over Hunter's objection. He declined to introduce evidence on the question, and protested against the introduction of evidence by the Government, which nevertheless was received and tended to show competency. The District Court thereupon denied the motion under 28 U.S.C. § 2255. This was, we think, the proper disposition of the matter.

Affirmed.

of the division, deciding it, see Judge Fahy's dissenting opinion in Contee, stressing the absence of any request for a hearing upon competence after dis-

charge by the institution. There was, of course, no such request in this case.