Charles C. MARSHALL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18047.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 12, 1963.

Decided June 30, 1964.

Mr. Kingdon Gould, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Stuart R. Pollak, Attorney, Department of Justice, of the bar of the Supreme Court of California, pro hac vice by special leave of court, with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee. Mr. Robert D. Devlin, Asst. U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, Senior Circuit Judge, WASHINGTON and DANAHER, Circuit Judges.

EDGERTON, Senior Circuit Judge:

As the government says, this case has a long history. Marshall was sentenced July 26, 1963, for a rape charged to have been committed on September 23, 1959. He was arrested October 28, 1959, and indicted November 16, 1959. His third trial, which began July 8, 1963, resulted in the conviction that is here on appeal. The following outline covers the period of some three years and eight months between the indictment and this trial.

5. Cf. N.L.R.B. v. Transport Clearings, Inc., 311 F.2d 519, 523–524 (5th Cir. 1962); Union Carbide Corp. v. N.L.R.B., 310 F. 2d 844 (6th Cir. 1962).

(1) 75 days, from indictment to February 1, 1960, when the first trial began. Some delay was caused by illness of appellant's assigned counsel and his need of time to prepare. The jury did not agree on a verdict.

(2) 71 days, from the end of the first trial on February 2, 1960, to the second trial on May 12, 1960. During this period there were several continuances: from February 19 to March 22 because new assigned counsel needed time to prepare, to April 26 because a co-defendant's counsel needed time to prepare, to May 2 because appellant was ill, and to May 12 because a co-defendant's counsel had another engagement. At the close of the government's case Marshall pleaded guilty to assault with intent to rape.

(3) On November 12, 1960, after he had served six months of his sentence, Marshall moved to vacate his plea of guilty.

(4) The motion to vacate was pending 16 months, till March 12, 1962. During all this time appellant was either in prison or in a mental hospital. In January, 1961, he was transferred from Lorton, where he was serving his sentence, to St. Elizabeths for treatment of a mental illness because the Legal Psychiatric Service certified that he was insane. On January 30, 1961 counsel was appointed to represent him on his motion to vacate. On March 13 and again on April 11, 1961, hearing on his motion was continued at his request to allow more time for mental examination. The motion to vacate was heard on February 16 and March 9, 1962. On March 12, 1962 the guilty plea was vacated under 28 U.S.C. § 2255.

(5) On or about March 15, 1962 appellant's third trial was set for July 16, 1962, and he was committed to St. Elizabeths for mental examination, although he had been there for treatment since January 1961. He remained there until June 14, 1962, when he was returned to jail as competent to stand trial. But his third and last trial, resulting in the conviction now here on appeal, was not held until July 8, *1963*. During this period of over a year there were the following continuances:

(6) 116 days, June 14 to October 8, 1962. Though trial had been set for July 16, on June 12 the trial date was moved back to October 8 "because of the summer schedule and the unavailability of jurors and witnesses."

(7) 38 days, October 8 to November 15, 1962. On October 1, one week before the date set for trial and 45 days after trial counsel was appointed, he asked and was granted leave to withdraw because he had no experience in criminal law. He should not have been appointed in the first place. A capital trial is no place for a lawyer to begin acquiring experience in criminal practice.

Trial was set for November 15. Another lawyer was appointed on October 2 and withdrew, for what reason does not appear, within 6 days. A third was appointed October 8, 1962.

(8) 67 days, November 15, 1962 to January 21, 1963. On November 15, 38 days after counsel's appointment, he moved at appellant's request for more time to prepare. The court continued the trial to January 21, 1963, 67 days later. It does not appear that so long a delay was needed or asked. On December 14, 1962, counsel asked and was granted leave to withdraw because of "serious illness in the family and because he was behind in other office work." He said he had spent very little time on the case. Five days later the court again appointed new counsel.

On January 10, 1963, appellant pro se moved to dismiss the indictment for lack of a speedy trial.

(9) 7 days, January 21 to January 28, 1963. The prosecutor was occupied with another case.

(10) On January 28, 1963, defense counsel was ill with influenza. Instead of granting a reasonable continuance, such as a week or two, the court continued the case for 42 days, till March 11.

(11) 42 days, March 11 to April 22, 1963. On February 13, the government asked for a continuance beyond March 11 because the complaining witness was expecting a child in late March. Trial was set for April 22. As far as appears, it might have been held in February.

(12) 21 days, April 22 to May 13, 1963. Government counsel was ill.

On April 24, appellant renewed his motion to dismiss the indictment for lack of a speedy trial.

(13) 61 days, May 14 to July 8, 1963. On May 14 defense counsel asked leave to withdraw. He said the defendant had become "highly enraged * * * and charged that he believed that I was conspiring with others against him to bring about his conviction." Counsel also informed the court that a St. Elizabeths doctor "considers Mr. Marshall still very seriously ill", and questioned his client's "ability to cooperate * * * in the defense". Without consulting appellant or informing him that counsel's withdrawal would cause more months of delay, the court granted counsel's request, continued the case to July 1, and appointed a fifth lawyer, who withdrew eight days later for no recorded reason. Finally, on July 8, 1963, a sixth lawyer, who told the court he could not put his client on the stand or even communicate effectively with him and that he "blacks out",[1] tried the case. It had been continued from July 1 to July 8 because a new jury list was needed.

On May 21, 1963, appellant had made a third motion to dismiss the indictment for lack of a speedy trial.

Until July 8, 1960, when he was sentenced after his second trial, appellant was out on bond. From that time until December 4, 1963, he was either in the District of Columbia jail, at Lorton, or at St. Elizabeths. In October, 1962, he asked that bond be set at $1,000 but the District Court set it at $5,000, which he could not meet. On December 4, 1963, he was released pending appeal on bond of $500 by order of this court.

If we were "talking English, not law", it would not be suggested that a man who was tried three years and eight months after indictment had a "speedy" trial. We are to decide whether Marshall had a speedy trial in the technical sense that the law has given to this Sixth Amendment right. We think he did not.

On March 12, 1962, when his motion to vacate his former plea of guilty was granted, Marshall had been in St. Elizabeths for treatment more than a year. There was or should have been no occasion to commit him to St. Elizabeths again for a 90-day examination in order to determine whether he was competent to stand trial, because the previous commitment had given the hospital ample

---

1. THE COURT: Is the defendant going to take the stand?

MR. HARRIS: No, Your Honor. I can't put him on the stand. I have been really unable to communicate with him. He blacks out.

THE COURT: I wanted to put on the record for him to state that he wanted to take the stand, if he was going to take the stand. I knew you were appointed.

MR. HARRIS: I am appointed, Your Honor. I doubt that he can take the stand, Your Honor. He has been unable to give me information.

THE COURT: I am not interested as long as he is not going to take the stand. If he were going to take the stand I would like to have it on the record for your protection.

MR. HARRIS: Thank you, Your Honor.

24 D.C.Code § 301 provides: "Whenever * * * prior to the imposition of sentence * * * it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused * * * is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed * * * for examination and observation * * *." Because we are reversing on other grounds, we need not decide whether it was plain error requiring reversal for the court to permit the trial to proceed further without a new investigation of the defendant's competence. Thirteen months had elapsed since it had been determined that he was competent.

opportunity to determine his condition. The three months' delay (paragraph (5) above) from his new commitment to the hospital on March 15, 1962 to his return from the hospital on June 14, 1962, as competent to stand trial, should not have occurred.

Since appellant's first two trials were short, it should have been foreseen that his third trial, which took only three days, would be short. Since the case was 31 months old in June 1962, the court should then have arranged its calendar so as to avoid postponing the trial until October. Most of the 116-day delay described in paragraph (6) should have been avoided.

The 38-day delay described in paragraph (7), from October 8 to November 15, 1962, resulted from the court's inappropriate assignment of counsel. The court should have avoided, also, much of the 67-day delay described in paragraph (8), most of the 42-day delay described in paragraph (10), and most of the 42-day delay described in paragraph (11). The short delays described in paragraphs (9) and (12) call for no comment except that Marshall did not cause them.

In Smith v. United States, 118 U.S. App.D.C. ——, 331 F.2d 784, which this court *in banc* decided February 20, 1964, we held that the speedy trial question turns on whether "the delay has been arbitrary, purposeful, oppressive or vexatious." (331 F.2d at 787.) By this test Marshall did not have a speedy trial. Though the delay was not purposeful in any meaningful sense, much of it was arbitrary, and in the aggregate it was oppressive and vexatious.

We held that Smith was not denied a speedy trial. He was tried five months after indictment. Marshall was tried 43 months after indictment, 32 months after he moved to vacate a plea of guilty, almost 16 months after a trial date was first set, and almost 13 months after he was found competent to stand trial. In Smith, "Alerted by the appellant's claim of denial of speedy trial * * * the judge then put the case upon a day today basis." 331 F.2d at 788 Marshall moved not once but three times, in January, April, and May, 1963, to dismiss the indictment for lack of a speedy trial. His motions had no apparent effect. If five months' delay was not arbitrary, oppressive or vexatious in the circumstances of Smith, it by no means follows that far longer delay was not arbitrary, oppressive or vexatious in the circumstances of this case.

Delay was exceedingly prejudicial to Marshall. Treatment for mental illness, which he had been undergoing at St. Elizabeths, was interrupted for months, while he waited in jail for his third and final trial. But that is a relatively secondary matter. Delay appears to have been fatal to Marshall's defense. In 1960, at his first trial, he testified effectively in support of his contention that the prosecutrix consented. In that trial, the jury did not convict him. In June, 1962, he was found at St. Elizabeths to be competent to stand trial. But in July, 1963, when he was tried once more, according to the undisputed statements of his counsel he could not communicate effectively and was not able to take the stand. This time he was convicted.

Because Marshall's Sixth Amendment right to a speedy trial was denied, the judgment of conviction must be vacated and the indictment dismissed.

Reversed, with directions to vacate the judgment and dismiss the indictment.

WASHINGTON, Circuit Judge:

I concur, for the reasons set out below, in the view expressed in Judge Edgerton's opinion that the indictment charging appellant with rape must be dismissed because appellant's constitutional right to a speedy trial was denied.

I emphasize first that appellant's claim that his trial was not speedy in the constitutional sense relates only to events occurring after the District Court, "upon the basis of the testimony" of two psychiatrists, allowed him on March 12, 1962,

to withdraw his plea of guilty, given nearly two years earlier, to the lesser (included) offense of assault with intent to commit rape; after the Acting Superintendent of St. Elizabeths Hospital, to which appellant had been committed for mental examination on his own motion, reported on June 11, 1962, that in the opinion of the Hospital's staff the appellant was mentally competent to stand trial; and after the appellant was released on June 14, 1962, to the United States Marshal to be returned to jail and tried.[1]

The trial finally occurred on July 8, 1963, more than a year after June 14, 1962. The facts bringing about this long delay are set out chronologically in the attached appendix. I must conclude that in the circumstances this delay in trial for more than a year was so prejudicial, oppressive, and vexatious as to amount to a violation of appellant's Sixth Amendment right to a speedy trial.

When the District Court allowed withdrawal of the plea of guilty to the lesser included offense in March 1962, it set the case for trial on the following July 16. However, on June 12 the trial was continued by the court until October 8, 1962, as the Assignment Commissioner noted, because of the summer schedule and the unavailability of jurors and witnesses. No further explanation appears. I think this delay cannot be condoned for the reasons given. The appellant was to be tried on a charge for which the death penalty might be imposed. The District Court is required by FED.R.CRIM.P. 50 to give preference to criminal proceedings and I think particularly to one of this type, where since May 12, 1960, appellant appears to have been either in jail or in a mental hospital. We judicially know that criminal cases are tried during the summer months pursuant to the reduced summer schedule, and that jurors can be made available for this purpose. Witnesses also can generally be made available by subpoena or their testimony be taken by deposition, and in the absence of some persuasive showing to the contrary, the trial should have occurred in the summer months. To be sure, the appellant did not ask the District Court to appoint new counsel for him[2] until August 14, 1962, and counsel was appointed to represent him on August 17. Notwithstanding this, I think that the postponement of trial until October 8 was not shown to be justified. The record before us does not indicate that after his appointment counsel asked for or required nearly two months for preparation.

I need not go fully into the matter of the delays beyond October 8, 1962, until trial of the case was actually commenced on July 8, 1963. Some of them were perhaps unavoidable, such as the postponement from July 1 to July 8, 1963, and some appear to be attributable to the appellant or to the various counsel appointed to represent him. But the appellant *pro se* on January 10, 1963, moved to dismiss the indictment against him because, as he alleged, he had not had the speedy trial guaranteed him by the Constitution, and subsequent like motions were filed by him on April 24, 1963, and May 21, 1963. Even assuming arguendo, contrary to what I have said, that the delay before January was satisfactorily explainable in its entirety, I think that the receipt of the first motion on January 10, 1963, protesting the delay on constitutional grounds, required the District Court to take the necessary steps to see that the trial then set for January 21, 1963, take place on that day,

---

1. As appellant's brief says:
   "In view of the fact that until June 14, 1962, Marshall was at St. Elizabeth's for psychiatric examination, and that it can be argued that until a finding of present competence was made Marshall was not subject to retrial, appellant is willing to accept June 14, 1962 as being the critical date."

2. Before that time appellant was apparently represented by retained counsel. He dismissed that lawyer and, as stated, on August 14 sought new counsel.

or as soon thereafter as possible.[3] Instead, there were successive postponements until January 28, March 11, April 22, May 13, May 14, July 1, and finally July 8. Although the reasons given for the various postponements may have justified a postponement for a reasonable period in most or perhaps all of the instances, I think it was unreasonable, and in violation of appellant's constitutional rights, to order postponements for the length of time allowed in at least the three instances where the trial was delayed for more than a month. In my view, the case should each time have been put on a day-to-day basis, see fn. 3, so that unreasonable delay would not occur. Cf. King v. United States, 105 U.S.App.D.C. 193, 265 F.2d 567, cert. denied, 359 U.S. 998, 79 S.Ct. 1124, 3 L.Ed.2d 986 (1959), including the dissent in which I concurred.

It is my view also that the delay is not shown not to have prejudiced the defendant in defending himself at his trial. Cf. Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957). He took the stand at his first trial, which resulted in a hung jury. At the trial held on July 8, 1963, he was unable, according to statements of his appointed counsel, to communicate effectively and thus to testify. Since the report to the District Court by the Acting Superintendent of St. Elizabeths Hospital on June 11, 1962, stated that it was the opinion of the Hospital Staff that "Marshall is mentally competent to understand the nature of the proceedings against him and to assist properly in the preparation of his defense," an assumption is required for present purposes that the appellant had the ability at that time to communicate effectively. His loss of that ability prior to trial clearly indicates, in the absence of a showing to the contrary, that substantial prejudice to appellant's defense resulted in the long delay before his trial occurred on July 8, 1963.

Since I have concluded that the indictment must be dismissed, I do not reach any of the other points raised.

APPENDIX (to Judge Washington's opinion)

1. June 11, 1962: Letter from the Acting Superintendent of St. Elizabeths Hospital informing the District Court that in the opinion of the Hospital's staff, appellant was "mentally competent" to stand trial and that, although he suffered from mental disease, the criminal offense with which he was charged, if committed by him, was not a product of that disease.

2. June 12, 1962: Trial date, originally set for July 16, 1962, by the District Court on March 15, 1962, at time it allowed appellant to withdraw his plea of guilty, was continued to October 8, 1962, because of "the summer schedule and the unavailability of jurors and witnesses."

3. August 17, 1962: First counsel (#1)[1] appointed to represent appellant.

4. October 1, 1962: Counsel #1 allowed to withdraw because of lack of experience with criminal law,[2] and trial date continued to November 26, 1962, because of neces-

---

3. In a comparable situation in Smith v. United States, 118 U.S.App.D.C. ——, ——, 331 F.2d 784, 788 (1964), the District Court placed the case on a day-to-day basis, to be tried "as promptly as an opening developed with a court and counsel available." The Smith case is of course also distinguishable in other ways from this one, including the facts that the delay there (between indictment and trial) was for only about five months and that this period did not include the three summer months.

1. Since the date of the indictment appellant had previously had the services of five other attorneys.

2. Although this court frequently appoints counsel without experience to represent persons accused of crime before this court, even in capital cases, Judge Edgerton's opinion states of Counsel #1: "He should not have been appointed in the first place. A capital trial is no place for a lawyer to begin acquiring experience in criminal practice." I note that

sity of appointing new counsel for appellant.

5. October 2, 1962: Counsel #2 appointed to represent appellant.

6. October 8, 1962: Counsel #2 withdrawn (reason not disclosed) and Counsel #3 appointed.

7. November 15, 1962: Motion by appellant *pro se* to appoint other counsel for him [3] and to extend time for trial.

    Trial date continued from November 26, 1962, to January 21, 1963, on motion of Counsel #3 stating that appellant wanted a continuance because his attorney should have more time to prepare.

8. December 14, 1962: Counsel #3 withdrawn because of serious illness in his family and he was behind in his office work. Appellant had also requested other counsel on November 15 (see above).

9. December 19, 1962: Counsel #4 appointed.

10. January 10, 1963: Motion to dismiss indictment filed by appellant *pro se* for alleged denial of a speedy trial.[4]

11. January 18, 1963: Motion to dismiss denied, following argument by counsel.

12. January 21, 1963: Deposition of Dr. Julian, testifying on behalf of appellant, taken, and trial set for that date continued until January 28, 1963, because the United States Attorney was engaged in another trial.

13. January 28, 1963: Trial date continued to March 11, 1963, because

appellant's Counsel #4 was ill with flu.

14. February 13, 1963: Trial date continued to April 22, 1963, at Government's request because the complaining witness was to have a child during March.

15. April 22, 1963: Trial date continued to May 13, 1963, because Government counsel was ill.

16. May 13, 1963: Trial date continued to May 14, 1963, because Counsel #4 was engaged in trial in another court.

17. May 14, 1963: Case called; on oral motion, Counsel #4 was allowed to withdraw because of charges by appellant that he was conspiring to bring about appellant's conviction and would not properly defend appellant. Counsel #5 appointed and trial date continued to July 1, 1963, presumably to allow time for newly appointed counsel to prepare.

18. May 22, 1963: Counsel #5 withdrawn (reason does not appear) and Counsel #6 appointed.

19. July 1, 1963: Trial date continued until July 8, 1963, on order of court because new jurors had to be obtained and their names served on appellant.

20. July 8, 1963. Trial commenced.

21. July 10, 1963: Jury found appellant guilty as charged of rape.

22. July 29, 1963: Judgment of conviction entered and sentence fixed for period of 4 to 12 years.

DANAHER, Circuit Judge (dissenting): This appellant contends, principal-

---

courts would be greatly handicapped in making appointments of counsel for representation of indigent defendants in capital cases if they must be confined to attorneys with experience in criminal law.

3. Three of the attorneys appointed to represent the appellant prior to March 15, 1962, were permitted to withdraw; the first after he learned that appellant refused to tell him the true facts; another

because appellant did not want him as his lawyer; the third because appellant did not want her representation and "discharged" her as defense counsel.

4. Subsequent motions *pro se* to dismiss on this ground were filed on April 24, 1963, denied after hearing on May 3, 1963, and on May 21, 1963, denied after hearing and argument on June 19, 1963.

ly, that he was unlawfully denied a speedy trial, was brought to trial without a determination of his restored competency, and was twice put in jeopardy.

The record shows an indictment of this appellant on November 16, 1959 on a charge of rape. At his first trial in January 1960, the jury failed to agree. During his second trial the appellant withdrew his plea of not guilty and entered a plea of guilty to a lesser included offense of assault with intent to commit rape. Appellant thereafter filed a motion under 28 U.S.C. § 2255 to vacate that plea of guilty on the ground that he had been mentally incompetent at the time of trial. After a hearing on March 12, 1962, the District Court granted his motion to withdraw his plea of guilty and an order was entered committing the appellant to St. Elizabeths hospital for a mental examination.[1] The acting superintendent on June 11, 1962 certified to the court the conclusion of St. Elizabeths staff that the appellant was mentally competent to stand trial and, to the extent he had been suffering as of October 5, 1959 from "Anxiety Reaction (Conversion Features)," the alleged criminal offense "was not a product of this mental disease."

Since the appellant's discharge from St. Elizabeths he had had six court-appointed attorneys.[2] Appellant's own motions, his disagreements or dissatisfaction with counsel and problems involving the succession of attorneys had occasioned the largest share of whatever delay occurred. I think the speedy trial issue should be resolved against him in light of *Smith v. United States*.[3]

As to his contention that he improperly was brought to trial without an adjudication of his restored competency following examination at St. Elizabeths, it may be noted first that no objection was raised on that ground. Moreover, this court has held that "an unchallenged certificate of the hospital superintendent * * * obviates the necessity for further proceedings on the question of sanity." [4]

As to his claim of double jeopardy, the proceedings which had resulted in the first conviction on his plea of guilty to the charge of assault with intent to commit rape were reopened and that conviction was set aside on the appellant's own motion.[5] He thus is in no position to complain.[6]

The record before us discloses no error affecting substantial rights. I would affirm.

1. D.C.CODE, § 24–301 (1961).

2. Actually at one time or other no less than twelve attorneys had been appointed to represent him. His own attacks upon his attorneys or his motions that a different attorney be named precipitated much delay.

3. 118 U.S.App.D.C. ——, 331 F.2d 784 (1964).

4. Hunter v. United States, 116 U.S.App. D.C. 323, 325, 323 F.2d 625, 627 (1963); and see D.C.CODE, § 24–301 (1961).

5. Cf. Flynn v. United States, 217 F.2d 29 (9 Cir. 1954) cert. denied, 348 U.S. 930, 75 S.Ct. 344, 99 L.Ed. 729 (1955).

6. Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). "Mistrial because the jury was unable to agree is the classic example" of an occasion "where a second trial may be had." (dissenting opinion) 367 U.S. at 370, 81 S. Ct. at 1527; "The classic example is a mistrial because the jury is unable to agree." Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L. Ed.2d 100 (1963).